WALTHER LUTTGEN, Trustee *vs.* PERRY TIFFANY *et als.*

MARCH 9, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Wills. Trusts. Contingent Gifts. Classes.*

By will testator bequeathed his estate in trust, to pay over the income to the widow during her life, with bequest over of "all of my estate which may be remaining in the hands of my said trustee at the time of the decease of my said wife, to my children, share and share alike, and should any of my children die, previous to their mother having child or children my will is, that the issue of such deceased child, shall take from my estate the share its parent would have taken had that parent survived its mother, and that subject to these provisions my estate shall vest in my children-aforesaid in fee simple."

After the decease of testator, the widow advanced certain money to one of the sons, and in consideration of such advances, the widow, and the son entered into an agreement that upon the termination of the trust "wherein he (the son) has a vested interest contingent upon his surviving (his mother) the said amount shall be deducted from any share divisible to him, out of said trust."

Thereafter the son became bankrupt, his adjudication and discharge in bankruptcy both occurring prior to the death of the life beneficiary, and

after her decease, his trustee in bankruptcy claimed his share in the trust estate, except so much as might be found due the estate of his mother. Another son deceased in the life time of his mother, unmarried, and intestate.

*Held,* that the intention of testator was not to give any present estate or interest to the children at the time of his death, but to postpone the gift to them until the decease of the widow, and to have the estate remaining in the hands of the trustee at her death distributed among a class composed of his children living at the death of the widow and the issue of any deceased child, living at that time. The members of this class could not be ascertained until the death of the widow and the issue of a deceased child would take as purchasers under the will and not as heirs of the deceased child. Such a gift was wholly contingent both as to the time of vesting and as to the persons in whom it would vest, and was neither devisable, nor descendible, nor capable of being conveyed, while the life estate continued, but during that period was only a future possibility contingent upon the survival of the child.

*(2)  Wills.  Trusts.  Contingent Gifts.*

*Held, further,* that the executor of the will of the life beneficiary was entitled to receive from the share of the son the amount advanced to him under the terms of the executory agreement.

*(3)  Bankruptcy.  Property Passing to Trustee.*

Sec. 70 of the Bankruptcy Act, provides that "The trustee shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, to all (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

*Held,* that the son had no interest in the trust estate, which passed to his trustee in bankruptcy.

BILL IN EQUITY. Certified to Supreme Court after being ready for hearing for final decree in Superior Court.

PARKHURST, J. This is a bill in equity filed in the Superior Court in Newport County by the complainant, Walther Luttgen, as sole (substituted) trustee under the last will and testament of George Tiffany, deceased, for a construction of the will, as also for a judicial settlement of his account as trustee; for instructions as to the distribution of the funds in his hands; and for his discharge, upon making such distribution as the court shall direct.

The cause being ready for hearing for final decree in the Superior Court was certified to this court by decree of the

Superior Court entered in Providence on consent of all parties April 6th, 1914.

The testator, George Tiffany, died June 15th, 1886, a resident of Newport, Rhode Island, leaving him surviving his widow, Isabella B. Tiffany and four children, namely: Perry Tiffany, Belmont Tiffany, Jane Caroline Perry Tiffany and William Tiffany. Three of the children, Perry Tiffany, Belmont Tiffany and Jane Caroline Tiffany have personally appeared as respondents in this proceeding. Isabella B. Tiffany having died on the 5th day of January, 1912, her estate appears in this proceeding by August Belmont, the executor of her last will and testament; and William Tiffany having died on the 25th day of August, 1898, his estate appears herein by Belmont Tiffany, as administrator thereof. There are two additional respondents, to wit: Robert M. Miles, Jr., who appears as trustee in bankruptcy, appointed in the Southern District of New York, of Perry Tiffany; and the Illinois Surety Company, a corporation organized under the laws of the State of Illinois, which appears as a judgment creditor of Perry Tiffany.

By his will, executed September 30th, 1869, Mr. Tiffany bequeathed his entire estate, after payment of debts, to August Belmont, Senior (now deceased, father of the present August Belmont), as trustee, to hold and manage the same in his best discretion, "and in the same discretion to change the investments thereof by selling the same or any parts thereof, from time to time, as he may believe will be for the advantage of my estate, and to re-invest the proceeds of such sale as part of the property of said trust, and to receive and collect the income and profits of my said estate, and after deducting the costs and charges incident to the management of and keeping of the said property and estate in condition and paying taxes and insurance, I direct him to pay the said entire income semi-annually, over to my beloved wife, Isabella, during her natural life and to her I commit with entire confidence the care, custody and education of our own children. If my said wife should die before

all of our said children should arrive at the age of twenty-
one years, I direct my said trustee to hold the share or
shares of my estate belonging to such minor child (he providing
for them from the share of such minor in the income
of said estate in his discretion) during their minority and
subject to their provision, I give, devise and bequeath all
of my estate which may be remaining in the hands of my
said trustee at the time of the decease of my said wife, to
my children (intending herein to include after born children
should there be any), share and share alike, and should any
of my children die, previous to their mother having child or
children my will is, that the issue of such deceased child,
shall take from my estate the share its parent would have
taken had that parent survived its mother, and that subject
to these provisions my estate shall vest in my children
aforesaid in fee simple."

There is no dispute as to any material facts. As appears
in detail in the pleadings, August Belmont, the trustee
named in the will, accepted the trust and duly discharged his
duties as trustee until his death (November 24th, 1890).
By a decree of this court made and entered in the county of
Newport on June 20th, 1891, Walther Luttgen, of Redding,
Fairfield County, Connecticut, was appointed substituted
trustee to fill the vacancy so caused, duly qualified and has
since acted as such trustee, and in that capacity is the complainant
in the present action.

On August 25, 1898, after the death of George Tiffany
and during the life of Isabella B. Tiffany, one of the sons,
William Tiffany, died unmarried and intestate. His brother,
Belmont Tiffany, was duly appointed administrator of his
estate and as such is a respondent as above stated. Perry
Tiffany, Belmont Tiffany and Jane Caroline Perry Tiffany
survive and are respondents herein as above stated.

After the death of George Tiffany, his widow, the life
beneficiary under the trusts of the will above set forth,
personally advanced sums of money aggregating $21,000 for
the benefit of her son, the said Perry Tiffany, and thereupon

in consideration of such advances, she and the said Perry Tiffany and the said Belmont Tiffany entered into an agreement, dated October 31, 1899; it recited the assumption and taking up by Isabella B. Tiffany of obligations of Perry Tiffany relating to the underwriting of stock in a corporation; and in the first paragraph of the agreement provided that Perry Tiffany might redeem and take up the stock underwritten upon payment made in accordance with the terms of the agreement; the portions of the agreement material to be considered in this case are as follows:

"Second: That in the event of the said party of the second part not having elected to redeem the same then and in that event upon the termination of the trust created by the will of the father of the said party of the second part, wherein he, said party of the second part, has a vested interest contingent upon his surviving the party of the first part the said amount . . . shall and may be deducted from and out of any share or interest payable, divisible or distributable to him said party of the second part from or out of the said trust or trust fund, and be paid over by the trustee or trustees at the time being to and unto the administrators or executors of the said party of the first part." . . .

"Third: That if by reason of the intermediate death of the said party of the second part there should be no share or portion of said trust fund so as aforesaid payable to him and his interest therein shall have ceased, then in that event the said sum and amount of twenty-one thousand dollars ($21,000) . . . shall constitute a claim for the amount thereof against any the estate of the said party of the second part, and if any portion of the same still remains at the time of the termination of the said trust then the said party of the third part in consideration of the premises," etc., "hereby promises, covenants and agrees that the said items and all thereof shall and may be deducted from his the party of the third part's share or interest in said trust or trust fund . . . and be paid over by the trustee or trustees."

No portion of these moneys has been repaid; and the executor of Isabella B. Tiffany makes claim to an equitable lien under said agreement to the extent of the indebtedness of said Perry Tiffany thereunder, to be paid by the complainant trustee, out of the share of the trust fund to which said Perry Tiffany is entitled. The priority of this lien is not disputed by any of the parties.

Perry Tiffany became bankrupt on December 24, 1900, and was discharged on December 10, 1901; Robert M. Miles, Jr., was appointed trustee in bankruptcy by the United States District Court of the Southern District of New York, and' as above stated, appears as a respondent herein as trustee in bankruptcy of Perry Tiffany; and as such trustee claims the whole share of Perry Tiffany, as assets of the bankrupt's estate, except so much thereof as shall be found due to the estate of Isabella B. Tiffany.

On January 12th, 1912, a judgment for $2,017.90 against Perry Tiffany was entered in the Supreme Court of the State of New York in favor of the Illinois Surety Company, which makes claim herein against the share or interest of Perry Tiffany in said trust fund for the amount of said judgment, with interest.

Isabella B. Tiffany, the widow of the testator, died on January 5th, 1912.

Under the terms of the will of George Tiffany the trust which came into existence at his death (June 15th, 1886), terminated upon her death.

The respondents may be divided into two classes:

First: Members of the family, including the three children and the representatives of the estates of Isabella B. Tiffany and William Tiffany, whose various claims can be amicably adjusted among themselves.

Second: Claims adverse to the estate, which include the Illinois Surety Company, whose claim against Perry Tiffany's share in the trust fund is not disputed except by Robert M. Miles, trustee in bankruptcy of Perry Tiffany; and Robert M. Miles, trustee in bankruptcy of Perry Tiffany, whose

claim is disputed on the ground that Perry Tiffany had not such an interest in the trust fund created under his father's will as passed under the bankruptcy act of 1898 to a trustee in bankruptcy.

The questions which arise for the determination of this court are stated by the complainant substantially as follows:

FIRST: Under the will of George Tiffany did his son, William Tiffany (who died before his mother), take an interest in the trust fund thereby created, which passed at his death to his legal representatives?

SECOND: While the priority of the lien of the executor of Isabella B. Tiffany on the interest, share or rights of Perry Tiffany, for money advanced by her during her lifetime to him and secured to be repaid by the executory agreement hereinbefore referred to, is not disputed by any of the parties hereto, nevertheless it is deemed desirable that reference thereto be made in the decision of the court to assist in a proper adjustment of the various interests and distribution by the trustee under the court's decree as it is not specifically admitted in all the answers interposed.

THIRD: Under the will of George Tiffany did Perry Tiffany take an interest in the trust estate thereby created, which passed to his trustee in bankruptcy—his adjudication and discharge in bankruptcy, having both occurred prior to the death of the life tenant?

(1) The first duty of this court is to arrive if possible at a determination of the testator's intention from an examination of all the provisions of the will. Although the will is not so clear in all respects as might be desired, it is yet comparatively simple when viewed as a whole. The primary intention of the testator is to provide an income for his widow for life, and during her life the widow alone has the absolute and uncontrolled right to dispose of the net income as she sees fit; to her the testator commits "with entire confidence the care, custody and education of our own children;" but makes no conditions or restrictions in reference to the spending of the income; in other words, he confides

in the natural affection of a mother for her children, and in her fulfillment of the natural obligation existing between her and them; it is only through the mother that the children are to be benefited by the estate of their father so long as the mother lives and by this means the testator assures to his widow a more efficient control over the children than he could otherwise have given. Having thus provided for his widow for her life, and having thus insured to her the control of the entire income and thereby the control over her children, the testator's mind is then directed to the time of her decease and to the disposition of his estate at that time; and when he says, "I give," etc., "all of my estate which may be remaining in the hands of my said trustee at the time of the decease of my said wife, to my children," etc., we find at this point the first expression of intention to make a gift to the children; it is the estate "remaining in the hands of my said trustee at the decease of my said wife" which is given to the children, not the estate of which the testator was seized and possessed at the time of his death; in view of the broad discretionary powers given to the trustee to sell and reinvest, it is conceivable and indeed probable that the estate remaining in the hands of the trustee at the widow's death, if her life should be prolonged as it was, would be largely if not wholly different from that which he left at his death; again the use of the word "remaining" indicates that the testator had in mind the possibility of increase through favorable change of investment or decrease through misfortune or business disaster. We find in all these provisions a plain indication of the intention of the testator not to give any present estate or interest therein to his children at the time of his death, but to postpone the gift to them until the decease of the widow. This construction is further supported by the subsequent language of the will, "to my children (intending herein to include after-born children, should there be any), share and share alike, and should any of my children die previous to their mother having child or children my will is, that the issue of said deceased child

*shall take from my estate the share its parent would have taken* had that parent survived its mother," etc. It was the plain intention of the testator to have the estate remaining in the hands of the trustee at the widow's death distributed among a class composed of his children living at the death of the widow and the issue of a deceased child or children, if any, living at that time. The members of this class could not be ascertained until the death of the widow; the issue of a deceased child (if any) "shall *take from my estate*," *i. e.* shall take as purchasers under the will and not as heirs of the deceased child. It could not be known therefore until the death of the life beneficiary, whether any of the children of the testator would be living at that time to take the gift, or whether, any one of them or all of them being then deceased, the issue of a deceased child or children would take under the will. The gift is wholly contingent, both as to the time of vesting, depending upon the death of the widow, and as to the persons in whom it would vest at that time, whether in a child or children of the testator, or in the issue of a deceased child or children.

The Supreme Court of this state has always held that such gifts as we have construed the gift in this case to be are wholly contingent, and are neither devisable, nor descendible, nor capable of being conveyed, so long as the gift is thus contingent, or in other words, while the life estate continues.

In *Watson* v. *Woods*, 3 R. I. 226, a testator, after devising certain property to trustees for the benefit of his married daughter during her life, further provided as follows: "After the decease of my said daughter, Mary, I devise the said premises" . . . "unto the children of my said daughter, Mary, and their issue, in the same manner as they would have taken the same if the same had been devised unto my said daughter, Mary, and her heirs." . . . "But if there should be no child of my said daughter, nor issue of any such child, living at her decease, or in case of the subsequent death of all such children, leaving no issue, then I devise" . . . "unto my children, Henry, Eliza Ann

and Abigail, and to their respective heirs and assigns forever, to be equally divided between them."

It is held that it was the testator's intent that the estate pass to the descendants of the said Mary so long as there should be any in being, but that until her decease, her children could have no vested interest in the estate, nor power to convey or mortgage the same or create a mechanic's lien thereon.

From the fact that the testator says that his daughter's children and their issue are to take "in the same manner as they would have taken the same, if the same had been devised unto my said daughter Mary *and her heirs*," the court infers that they must be living at her death and continues, p. 232: "This is evidently the intent of the testator, as is made more apparent by the subsequent provision: 'But if there should be no child of my said daughter, nor issue of any such child, living at her decease, or in case of the subsequent death of all such children leaving no issue,' then to go to other children of the testator.

"He intended the estate should pass to the descendants of his daughter, so long as there were any in being. He is now using language pointed to a definite time, the death of his daughter. That language evidently contemplates the estates vesting at that time in the descendants of his daughter, such of them as were then living."

George Rivers, a son of Mary Rivers, the life beneficiary, who died prior to his mother, leaving surviving children, had in his lifetime given several mortgages purporting to cover his interest in lands included within the trust estate held for the benefit of Mary Rivers; and the question raised was whether he had such an interest under the devise as that he could give a valid mortgage, or create a mechanic's lien on such property; the court in conclusion holds as follows: "Upon this construction of the devise, the children of Mary Rivers have no vested estate during her life, and no remainder in this estate can vest until her death; whence it follows, that George Rivers, now deceased, had no power to

convey in fee or in mortgage the said estate, or any portion
thereof, or to encumber the same in any way, and that no
lien could by him be created thereon in favor of any person,
under the lien act, so-called.''

The principle which underlies and governs the decision of
the case last cited as well as of the cases to follow is nowhere
more clearly or tersely stated than by AMES, Chief Justice,
in *Brown* v. *Williams*, 5 R. I. 309, 315. In that case it
appeared that the testator devised property to trustees for
the use of his daughter, Mary Dockray, for life, with a
remainder in fee to her lawful issue, and in case she died leav-
ing no such issue ''to the children of my daughter, Ann
Brown, not only those that are now born, but also those
that may be born, to be equally divided between them,
share and share alike, or to the issue of deceased children, as
shall be living at the time of my said daughter, Mary
Dockray's decease; the children of a deceased child to take
the same share their parent, if living, would have taken,
the which I do hereby give to them, their heirs and assigns
forever.'' The opinion states the general doctrine as
follows: ''AMES, C. J. The question raised by this
demurrer, is, whether the late John D. Brown took such an
interest in the real or personal estate intrusted to the
principal defendants by the will of his grandfather, as to
entitle his wife, the complainant, as his general devisee and
legatee, to partition of the one or an account of the other,
as against them and the other defendants, their *cestuis que
trust*. It is well settled, that contingent and executory
estates and possibilities, accompanied by an interest, as
they will descend to the heir, or pass to the administrator
of the person entitled, according to the nature of the subject
of them, so they may be disposed of by his last will and testa-
ment. In *Roe* v. *Griffiths*, 1 Blackst. R. 605, Lord Mansfield
said, that in *Selwyn* v. *Selwyn*, 'he was prepared to have
shown, with the concurrence of all his brethren, that in all
contingent, springing, and executory uses, *where the person
who is to take is certain*, so that the same are descendible,

they are devisable; these being convertible terms;' and such is the established doctrine. Fearne on Conting. Rem. 366–370, and cases cited. It will be noticed, that the qualification is, 'where the person who is to take is certain;' for if the *contingency* is to decide who is to be the object of the contingent limitation, as the person, or of the persons, to or amongst whom the contingent or future interest is directed, as it cannot be determined in whom the interest is, until the contingency happens, no one can claim, before the contingency decides the matter, that any interest is vested in him to descend from, and hence to be transferred or devised by him." . . . "Although, therefore, it is a general rule, that contingent interests, as well as vested interests, pass to the real and personal representatives of the person entitled, according to the nature of such interests, so as to entitle such representatives to them when the contingencies happen, it is an equally well ascertained exception to the rule, that the contingent devisee has no such title to pass to his representatives, and none therefore to devise or bequeath, where the contingency is such, that his own existence at some particular future time is to determine whether any interest is to take effect in him, that is, whether he is to be a devisee of the contingent interest or not. Fearne on Conting. Rem. 364, *n. e.* 365, 370, 371; 1 Jarm. on Wills (2d Am. ed.) 653."

The opinion further says, p. 317: "The issue were to take the shares which their parents, 'if living, *would have taken;*' which strongly implies, that their parents were to take nothing, unless living at the death of Mary Dockray. Considering that the intent of the testator evidently was, that the remainder in fee in these lands should go, first to the issue of his daughter Mary, and in case his daughter Mary died, leaving no issue, then to the issue of his daughter Ann, whether children born or unborn at the time of making his will, or to the issue of dead children living at the death of Mary, we are satisfied, that the testator, by the words, 'as shall be living at the time of my said daughter, Mary

Dockray's death,' meant to designate as well what children, as what issue of the deceased children of his daughter Ann, should take." . . . "Our conclusion is, that only the children of Ann Brown, living at the death of Mary Dockray, were, in the contingency of her dying without issue, to participate in this remainder; and that the complainant's husband, who died before his Aunt Mary, took nothing in it, and hence had nothing in it to devise to his wife, the complainant."

There is a close resemblance between the language used by the testator in the case last cited, and that used by the testator in the case at bar. As we have construed the will in the case at bar as shown above, we find that the same principle should govern in both cases. In the case at bar we have found that the contingency is such that the existence of the person to take the gift "at some particular future time is to determine whether any interest is to take effect in him, that is, whether he is to be a devisee of the contingent interest or not."

The distinction between "contingent and executory estates and possibilities, accompanied by an interest," "where the person who is to take is certain," and other contingent and executory estates and possibilities where "the contingency is to decide who is to be the object of the contingent limitation," so well set forth in the last cited case, is further illustrated in this state in the case of *Loring* v. *Arnold*, 15 R. I. 428, where contingent remainders after a life-estate were given to certain persons by name; it was held that the interest of one of the persons named, was descendible and devisable and passed under her will, although she died in 1881, and the life-tenant died in 1885, leaving no wife nor children, so that the contingency was not determined until after her death.

Again, in *R. I. Hospital Trust Co.* v. *Harris*, 20 R. I. 408, this court construed a will (in many respects similar to the will of George Tiffany) where the unnamed children of a brother of the testator and the descendants of any of them

who may then have deceased were to have remainders after the determination of the widow's life-estate. The court followed the same principle of decision as above set forth, and found the remainders to be wholly contingent; and held that one of the unnamed children who had such a remainder contingent upon his surviving the determination of the widow's estate and who attempted to convey an interest in the estate during the lifetime of the beneficiary, and who also left a will, and who died before the widow "took no interest in the trust estate, and consequently that no interest in it passed under his deed," . . . "nor under his will" . . . "and that his widow" . . . "has no interest in the proceeds of the real estate in lieu of dower."

In *Melcher, Petitioner,* 24 R. I. 575, a will containing similar provisions was construed in accordance with the same principle, quoting at length from and approving the doctrine above quoted from *Brown* v. *Williams, supra;* and it was accordingly held that the remainders to the testator's children upon the decease of the widow were contingent and that the interests of the children were to attach only upon the decease of the widow, and that one of these children who died in the lifetime of the widow and who left a will, had no interest which passed to his devisees under the will. This case reviews and approves the cases already cited. See, also, *Ross* v. *Nettleton,* 24 R. I. 124.

*In re Howard for an Opinion,* 36 R. I. 417, the cases above were again reviewed and approved, and it was again held that the (unnamed) children of the testator took no interest in the trust estate "unless living when the trust terminated, which was upon the death of their mother;" and therefore that one of the children who died in the lifetime of the mother leaving a will had no devisable interest in the estate of the father.

As we have construed the will of George Tiffany, we find that the quality of the interests of his children under his will is of the same nature as in the cases above cited; and that during the lifetime of the widow, Isabella B. Tiffany, the

children had only a future possibility contingent upon their survival; and that such future possibility was not alienable, descendible or devisable during the life of the widow. It is therefore clear that William Tiffany, deceased, during the life of his mother, had no such interest in the trust fund as passed to his legal representatives, and the first question suggested is answered in the negative.

(2) In answer to the second question, regarding the right of the executor of the will of Isabella B. Tiffany to receive from the trust estate the amount of money advanced by her in her lifetime, to her son, Perry Tiffany, under the terms of the executory agreement which is set forth above, there is no question made by any party to this suit that such payment cannot lawfully be made out of the share of the trust estate which would otherwise be distributable to the said Perry Tiffany. The agreement is wholly executory in its terms and provides explicitly for just the situation which has arisen. This second question is therefore answered in the affirmative.

(3) In answer to the third question, whether Perry Tiffany took an interest in the trust estate created by the will which passed to his trustee in bankruptcy, in view of the foregoing discussion and determination of the nature of his interest, our opinion is that Perry Tiffany had no such interest as passed to his trustee in bankruptcy.

The provision of the Bankruptcy Act of 1898, under which the trustee claims, is as follows, being a portion of § 70 of that act, the essential words of which here applicable are: "The trustee of the estate of a bankrupt . . . shall . . . be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt . . . to all . . . (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

Perry Tiffany was upon his own petition filed December 24, 1900, in the United States District Court of the Southern

District of New York adjudicated a bankrupt, and further proceedings resulted in his discharge under the act, December 10, 1901; all this was while his mother, Isabella B. Tiffany, was living; she died as above stated, January 5, 1912.

In our view of the law as above set forth Perry Tiffany had not at any time prior to January 5, 1912, any such interest in the estate held in trust for his mother under his father's will as comes within the terms of the act above quoted. Our cases have consistently held that such a contingent interest or future possibility as we have found to be in Perry Tiffany was neither alienable, descendible nor devisable; consequently he had not under his father's will any "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

It appears that the trustee in bankruptcy, although notified by amended schedule filed by the bankrupt in February, 1901, that the bankrupt had some interest or future possibility under his father's will of which he might come into the enjoyment upon the death of his mother, never took any steps to have such interest appraised or sold, or in any way attempted to realize thereon for the benefit of the bankrupt's estate or creditors, until, after the widow's death, he now appears in this suit and claims under the distribution of the trust fund.

The adjudication of bankruptcy was made by the Hon. Addison Brown, Judge of the United States District Court for the Southern District of New York, on December 24, 1900. It may be of interest in this connection that Judge Brown, in the case of *In re Hoadley*, 101 Fed. 233, in an opinion filed May 1, 1900, nearly eight months before Perry Tiffany was adjudged a bankrupt, after construing with much care certain wills under which it was claimed that the bankrupts had an interest which passed to the trustee, decided that the interest of the bankrupts under the wills was not a vested interest, but was a contingent interest

dependent upon their surviving the life beneficiary, and did not pass to the trustee. The reasoning of the case is along precisely the same lines as in the Rhode Island cases above cited, and in our view correctly states the law. The provisions of the wills construed by Judge Brown, although more elaborately and more carefully drawn, are essentially similar to the provisions of the will of George Tiffany as we have construed them. The case was upon a review of the decision of a referee in bankruptcy; the decision of the referee contains a very careful and complete statement of the provisions of the wills, and a careful review of the numerous cases in New York applicable to the construction of the wills; and finds that "futurity attaches to the gift" under the wills and that the "bankrupts took no property under the wills referred to which can be reached for the payment of their debts or which can be taken by the trustee in this proceeding." In concurring with the conclusion of the referee, and after alluding to the statutes of the State of New York relating to remainders and the construction of such statutes by the cases decided by the highest court of that state, Judge Brown proceeds, p. 237: "The present case, however, differs from those (except *Moore* v. *Littel,* where the remainder was a present gift) in the fact that here the bankrupts are not personally named as devisees in either of the wills and that they can take only as members of a special and limited class of children living at the death of the life tenants; and as the latter are still living, it is at present wholly uncertain whether the bankrupts will ever be in the class of persons among whom the estates are to be divided on the death of the beneficiaries for life. The contingency being as to the persons who will take and not as to the event merely, a contingent remainder of that kind, it is said, not being vested in right or interest in the person, is inalienable. Chap. Susp. 49, 50. In the other cases last cited the persons to take ultimately were named in the will; there was no uncertainty as to the person, but only as to the event that might defeat their right. They

were regarded therefore as having a present right or interest in a future expectant estate, which by the state statute is devisable and alienable."

"The language of both the wills here in question is precisely like that which according to the later cases in the state court of appeals vests no right or interest in the children until the termination of the life estate; and this, as I understand, is what is intended by the somewhat modern phrase so frequently applied in the later reports to cases like the present, that 'futurity is annexed to the substance of the gift.'

"Upon the view, therefore, that the testators here intended no present gift of any estate or interest, in expectancy or otherwise, to pass to either of the bankrupts, and none until the death of the beneficiaries for life and then only to persons then living, that until then the trustees under the will held the entire estate, and that until then the bankrupts have no interest capable of being devised or aliened, the report is confirmed, and the application of the trustee in bankruptcy is denied."

The same judge, again on March 18, 1901, filed an opinion *In re Gardner*, 106 Fed. 670, again construing similar provisions of a will and held that "the gift is future and contingent only, and carries no present vested interest that is alienable." See, also, *In re Wetmore*, 102 Fed. 290; *In re Ehle*, 109 Fed. 625.

In the case of *In re Wetmore*, 102 Fed. 290, decided June 11, 1900, in the United States District Court for the Eastern District of Pennsylvania, and affirmed April 29, 1901, by the United States Circuit Court of Appeals, 108 Fed. 520, the same principle regarding the alienability of similar contingent interests under a will, probated in the State of New York, and with reference to the statute of the State of New York relating to such contingent interests, was followed and affirmed; the Circuit Court of Appeals (108 Fed. p. 523) makes certain remarks which have a bearing upon that phase of this case concerning the executory agreement made

by Perry Tiffany with his mother, as follows: "Nor is it material that the bankrupt might for a valuable consideration prior to the filing of the petition by contract in the form of an assignment, or by executory contract, have barred or precluded himself from enjoying or have become bound to permit others to have the exclusive benefit of, the fund in question. One may by deed of conveyance estop himself from claiming title to, and by executory contract may be obliged to transfer to others, property wholly acquired after the execution of such deed or contract. The trustee has no claim to the fund unless the bankrupt has some title to it at the date of the adjudication. It is the 'title of the bankrupt, as of the date he was adjudged a bankrupt,' which is 'vested by operation of law' in the trustee; and this title, so far as pertinent to this case, must be to 'property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.' A bare possibility or mere expectation of acquiring property does not constitute property or a title to property; nor can it be transferred or levied upon. While the right of enjoyment may be uncertain and contingent, it is necessary that an interest or title of some kind be vested in the bankrupt in order that it may pass by operation of law to the trustee. If the contingency or uncertainty be such as relates to the person, and not merely to the event, and he who is to take remains unascertained by name, designation or description, obviously no given individual while so unascertained can be held to have a property right to or in the subject matter of the gift or limitation." See, also, *In re Twaddell,* 110 Fed. 145, 147.

It seems likely that, in view of these cases in the bankruptcy court of the Southern District of New York and of the other cases in bankruptcy decided at the very time when the bankrupt estate of Perry Tiffany was in process of administration within the jurisdiction of the same Judge Brown, it was deemed that Perry Tiffany had no such interest as passed to his trustee in bankruptcy.

Counsel for the trustee in bankruptcy have cited certain cases in Massachusetts, from which it appears that the Supreme Judicial Court of that state has adopted rules relating to contingent interests under wills construed by that court and as to the transmissibility of such interests to assignees in insolvency and trustees in bankruptcy, which go beyond the rules adopted by this court, in holding that such interests as we are here considering while contingent are nevertheless transmissible and pass to assignees in insolvency and trustees in bankruptcy. See *Clarke* v. *Fay,* 205 Mass. 228, where former cases are reviewed. These cases seem to be in direct conflict with the decisions of this court in cases involving similar contingent interests; but our own line of cases seems to us to be based upon proper rules and distinctions, and we see no reason to change the rule of this court which we have consistently followed in all cases of a similar character since 1855, when the case of *Watson* v. *Woods,* 3 R. I. 226 was decided.

It would be useless and would transcend the proper bounds of an opinion to attempt to discuss and to reconcile or distinguish all of the cases cited on the numerous briefs of the parties to this suit. We are satisfied to follow the well-established and well considered cases in this court heretofore decided, and find nothing therein in conflict with the opinion herein expressed; nor do we find in any of the cases cited by the parties, other than the Massachusetts cases referred to, any serious conflict of authority with regard to the alienability, descendibility or devisability of such contingent interests as are mere future possibilities, as we have found the interests of the children of George Tiffany under his will to be, after a careful consideration and construction of the entire will. Much of the difficulty in the consideration of the great mass of cases cited arises from the difference in the use of language in wills no two of which are found to be precisely alike. We think that the provisions of the Tiffany will are however sufficiently like the provisions of other wills

construed in our former opinions above cited to bring the decision of this case clearly within our former cases.

The parties may present to the court a decree in accordance with this opinion for our approval on or before the 22d day of March, 1915.

*Charles Stewart Davison, Charles H. Koehne, Jr.,* for complainant.

*Robert M. Franklin,* for Perry Tiffany, respondent.

*Charles Stewart Davison, Victor W. Cutting,* of counsel.

*Edwards & Angell,* for Robert M. Miles, Trustee, in bankruptcy.

*Francis B. Keeney, Charles S. Yawyer,* of counsel.

*Gardner, Pirce & Thornley,* for Illinois Surety Co.

*Frank F. Nolan,* for Jane Caroline Perry Tiffany and August Belmont, Jr., Ex. of Isabella B. Tiffany.

*Morimer A. Sullivan,* for Belmont Tiffany, Admr. of William Tiffany.