CHRISTOPHER G. PERRY, ADMINISTRATOR, v. WILLIAM HUNTER AND OTHERS.

In construing a Will, the Court will put themselves in the situation of the Testator, in reference to the property and the relative claims of his family, the relations subsisting between him and them, and the circumstances which surrounded him, in order to be enlightened where the provisions are doubtful or may admit of more than one interpretation, but not where the meaning of the language of the Will is plain.

Where a testator, being at the time of his death possessed of a large property in French Government Securities and in deposits in the Savings Bank in France, under the Will of his sister, then residing in France, of whose death he had not heard, though he knew she had made a Will in his favor and had been dangerously ill, and knew also of what her property consisted, gave and bequeathed, by the 9th clause of his Will, after certain specific provisions, "All the residue of his funds;" and by the tenth clause gave, devised and bequeathed "all the residue and remainder of the estate or estates, of whatever nature or whenever acquired, of which I may die seized or possessed," &c. held, that the property acquired under his sister's Will was testate and passed under the language of the ninth clause.

A BILL in Equity for instructions by an administrator, with the Will annexed. The testator, William Hunter, executed his Will on the 29th of November, 1849, and died at Newport, R. I. on the 3d of December, 1849. This Will, after several specific bequests, contained the following clauses :

"*Ninth.* All the residue of my funds, after providing for the discharge of the annuity and legacies hereintofore provided, and the payment of my debts as aforesaid, I hereby give and bequeath unto my two sons, Thomas R. Hunter and Charles Hunter, to be equally divided between

them, to hold to them and their respective heirs and assigns forever."

"*Tenth.* I give, devise and bequeath unto my two sons, William Hunter, Jr. and Charles Hunter, all the residue and remainder of the estate or estates of whatever nature or whenever acquired, of which I may die seized or possessed, to be equally divided between them, to have and to hold the same to them and their respective heirs and assigns forever."

By the agreed statement of facts it appeared that, besides the real estate in said Will specifically devised, the testator was the owner of one undivided half of a certain real estate situated next to his homestead, which he and his sons, Thomas R. and Charles Hunter, the owners of the other undivided half part, had purchased for the sum of one thousand dollars; that his personal property, besides the property hereinafter mentioned as derived by him from the Will of Elizabeth Hunter, consisted household furniture, the sum of $19,156 91, loaned to or on deposit with the house of Hugh Birckhead & Co., of Baltimore; one share in the Redwood Library, appraised at ten dollars; one share in the Providence Athenæum, appraised at fifteen dollars; one pew in Trinity Church, appraised at fifty dollars; one gold watch, appraised at sixty-five dollars; four dozen of Madeira wine, appraised at twenty-four dollars; one third of a pipe of Madeira wine, appraised at forty dollars; Milton Hall's note with interest, appraised at two hundred and seventy one dollars; John Randolph's note, appraised at ten dollars; cash, twenty-five dollars; silver plate, appraised at one hundred and sixty-seven dollars; and his ward robe, not appraised: That the debts due by the deceased, amounted to the sum of about three thousand dollars;

that, at or about the time of making his said Will, the said William Hunter ordered to be delivered up to his son, William Hunter, Jr., a note for three thousand dollars, due to him from his said son, for advances previously made by him to his said son, and which was then due and unpaid, with interest to the amount of about five hundred dollars, in addition to the principal sum, and that said note was given up to his said son just before his death, according to his said order.

It further appeared, that Elizabeth Hunter, the sister of said William Hunter, made her Will on the third day of May, 1839 ; she then residing, and continuing to reside until the time of her death, at Pau, in the southern part of France ; that she died at Pau on the 19th day of November, 1849; that the said William Hunter had large expectations from the Will of his sister, having been notified by her that she had made a Will in his favor; that she was old and he knew that she was ill; and that he delayed making his Will for some time, in expectation of hearing of her death and the disposition she had made of her property, but finding himself failing he made his Will, as aforesaid, and died without hearing or knowing of the death of his sister, or of the disposition she had actually made of her property, the news of which arrived in Newport sometime after his death.

Under this Will, the testator, as residuary legatee, took property to the value of $25,480—her property consisting principally of investments in the French funds, of which the testator was apprised, from time to time, by letters from her, the comparatively small balance of it being on deposit in a Savings Bank, and loaned on mortgage security in France ; that the administrator had received from the Will of said Elizabeth, as the testator's

portion of the proceeds of her estate, ordered by said administrator to be sold, the said sum of $25,480 in cash.

Upon these facts the administrator prayed to be instructed, whether,

1st. The property aforesaid of said William, derived under the Will of his said sister, passed under the Will of said William or was intestate property.

2d. If it did pass under the Will of said William, to whom it passed, and in what parts or proportions, under and by virtue of said Will.

*Ames* for Mary Pierce and husband.

Parol evidence is admissible to enable the Court to place themselves in the position of the testator, and, regarding the property and objects of his bounty as far as possible through his eyes, so to construe the Will as shall give the fullest effect to his intention. (1 Greenleaf's Ev. §287, note 3,—5th proposition of Wigram.) In this view, the important fact is the testator's ignorance of his sister's death. He knew she had made a Will in his favor, that she had been feeble, but he did not know that he was possessed of these funds in France. If he did not possess this property, he could not dispose of it, and, to make it pass under the vague generalities of the Will, when he could not know that it was his, would be to defeat his intention. And this view is confirmed by the Will itself, which is a fair and equal division of the property, which he knew he had, but most strange and unaccountable, if it was intended to include the French estate. The words would pass that estate, if he had known it was his, but the question is not what the words are competent to pass, but what they were intended to pass. The words rest and

residue are not technical and do not necessarily include all property, not otherwise disposed of. *Sparring v. Butler.* (6 Term, 610.) (9 Vesey, 136.)

It is perfectly within the discretion of the Court to limit sweeping clauses, conformably to the testator's intention, if the intention is discoverable from a legitimate source.

2d. If the Will passes all the property, the French estate passes under the first residuary clause. The property is most aptly described by this clause. This still leaves property to satisfy the terms of the other clause, and so long as both clauses are satisfied, it should rather pass, as specifically designated by the 9th clause, than under the general terms of the tenth. (1 Jarm. 393, 412.) (2 Met. 222.) This view is confirmed by the fact, that William has a legacy under a previous clause, and by the fact, that this is the clause, which is charged with the payment of debts and legacies, and being subject to all the losses should be benefited by all accessions.

*Carpenter* for William Hunter.

This Will operates upon two classes of property, the one which the testator knew he possessed, the other which he knew he might possess. Up to the 9th clause, there is no allusion to the French property, and, as the testator was providing for the payment of debts and specific legacies, he is evidently speaking of funds which he knew he possessed, because he could not have intended that their payment should depend upon a contingency. Having made these provisions, in the ninth clause he disposes of the rest and residue of his funds. Can there be a doubt that the word residue has a glance backward, as if it were something left out of what was given before,

and in the previous clauses there is nothing to refer to the French funds. If this property is to pass by the ninth clause, because the word funds most properly designates it, then only that should pass which was in government securities. But it is evident the word is used in its popular sense, and having disposed of a part of the funds which he knew he had, he gives the residue by this clause. But by the tenth clause, he gives all the remainder of his "estate or estates," *whenever acquired,* "of which he might die seized or possessed." This property cannot be intestate. There is no authority to show that where the testator owns property of which he knows not, the Court can pronounce it intestate, when it can pass under the residuary clauses. The only question is, whether it passes by the ninth or the tenth clause. The counsel argued from the language of the tenth clause, the other provisions of the bill, and the relations of the testator to his family, that the property passed by the tenth clause.

*Potter,* for Thomas R. and Charles Hunter, contended that the French property passed under the ninth clause, that the language in that clause was peculiarly appropriate to pass this property, that in the tenth being more applicable to real estate, and that, if it might pass under either or both the clauses by legal intendment, then there was a repugnance and the property was intestate. (Powell on Devises, 348, 361. 1 Jarm. 411, 417.)

Greene, C. J., delivered the opinion of the Court. In construing a will, we admit the rule that the Court are to put themselves in the situation of the testator with reference to the property and the relative claims of his

family, the relations subsisting between him and them and the circumstances which surrounded him.

But this rule is intended to aid in the construction of the will, where the provisions are doubtful or may admit of more than one interpretation, but not to control the plain meaning of the language of the will. Where this language is clear and explicit it must prevail.

We think the testator's will shows clearly, that he intended this will should pass all his property.

It contains two residuary clauses, the one giving all the rest and residue of the testator's funds, and the other, giving and devising " all the residue and remainder of the estate or estates of whatever nature or whenever acquired of which he might die seized or possessed." When the testator uses such language as this, it clearly shows he means to pass all his property, known and unknown.

Besides, the agreed statement of facts shows the testator had heard, at the time he made his will, that his sister was dangerously ill and that her death was not then improbable. This sister informed him, that she had made her will in his favor, and he delayed for sometime the making of his will, in the expectation of hearing of her death.

Under these circumstances it is incredible, that the testator should have used such language, unless he had intended to pass the property which might have been given him by his sister's will.

There remains to be considered a question of more difficulty, and, that is, under which of these residuary classes the property passed.

The language of the first residuary clause is : " All the residue of my *funds,* after providing for the discharge of the annuity and legacies, herein before provided, and the payment of my debts as aforesaid, I give and be

queath unto my two sons, Thomas R. Hunter and Charles Hunter," &c. The debt due from Messrs. Birckhead & Co., was the principal means, the testator left of his own property, to pay the legacies, and from the language of this first residuary clause, giving the residuum of his funds, it is obvious he considered this debt as a part of his funds, and this clause was intended to give all that remained of this debt, after the legacies were paid.

Now, we may reasonably suppose, that if the testator intended this term to embrace a debt due from Messrs. Birckhead & Co., he might well intend by the same term to embrace a debt due from the French Government, and deposits in the Savings Bank in France.

Webster says the term " funds", means, among other things, money lent to government, constituting a national debt. This is not a legal term, with a settled meaning, but is a term in common use.

We do not think the term means a chattel or furniture or the like, but money and securities, more especially government securities.

We think, therefore, that the sister's property consisting of French Government stock, and deposits in the Savings Bank in France, passed under the ninth clause.