*Williams & Palmer*, for complainants.
*William M. P. Bowen*, for respondents.

---

DEXTER O. TIFFANY *et al.*, EXRS., *vs.* WILLIAM T. EMMET *et al.*

NEWPORT—SEPTEMBER 10, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Wills.    Children and Grandchildren.*

Testamentary bequest as follows : "Fifth. I give and bequeath the sum of $5,000 to each one of the following-named nieces of my late wife, and also $5,000 to the children of A., a deceased niece of my wife.   Said living nieces are :  .  .  .

"Eighth.   In case of the death before my own decease of any of the legatees hereinbefore named, then everything by this will given to the person so dying shall in every instance go and I give devise and bequeath the same to the kindred of such person at the date of my death, according to the present statutes of Rhode Island prescribing the distribution of estates of persons dying intestate.

"Ninth.   The Buhl clock in my dwelling-house to the children of A.

"Thirteenth.   All the rest, residue, and remainder of my estate I give, devise, and bequeath equally to the legatees named in the fourth article and the fifth article of this will and to their heirs ; the children of E. to be deemed a class entitled to one share and the children of A. to be also deemed a class entitled to one share."

The will was dated May 12, 1900, and proved November 8, 1901.   A. died September 25, 1895, and left five children surviving her, and also one child, B., who afterwards died on February 9, 1897, leaving a child surviving him, C., and a widow, D. :—

*Held,* that there was nothing in the will to justify extending by construction the meaning of the word "children" beyond its common and ordinary signification so as to include grandchildren of A.

*Held,* further, that the word "children," as used in the fifth, ninth, and thirteenth clauses, meant only children living at the time of the making

of the will; and hence C. took nothing by virtue of the eighth clause of the will.

*Held,* further, that D. took nothing under the will.

(2) *Injunctions. Wills.*

Upon a bill brought by executors seeking the construction of a will, and praying that the respondents be enjoined from bringing actions at law against them for their legacies, after a judicial construction of the will, such prayer will be denied, as the executors would have no right to such relief against those found entitled to the legacies, and it is improbable that actions would be brought by those who the court has found are not entitled to such legacies.

(3) *Wills. Construction. Costs.*

Upon a bill brought by executors seeking construction of a will, as the instructions sought are for the benefit of the executors in settling the estate, the expense is a proper charge upon the estate, and the executors cannot recover costs against those found not entitled to a share thereof.

BILL IN EQUITY, seeking the construction of a will. Heard on bill and answers.

ROGERS, J. This is a bill in equity for the construction of certain sections of the will of Edmund Tweedy, late of the city and county of Newport, deceased, and for other relief. Dexter O. Tiffany and Florence Tweedy, the duly qualified executors of said will, which was dated May 12, 1900, and duly proved before the Court of Probate of said Newport, November 8, 1901, are the complainants; and William T. Emmet, Katharine E. Keogh, Elizabeth L. Emmet, Grenville T. Emmet, Eleanor T. Emmet, Mary Olyphant Curtis, and Mary Olyphant Emmet are the respondents.

Katharine Temple Emmet, a niece of the testator's wife, died September 25, 1895, and left children her surviving, viz., —the first five above named respondents, and also one, Richard Stockton Emmet, who afterwards died on February 9, 1897, leaving a child surviving him, viz.,—the said Mary Olyphant Emmet, a minor under the age of twenty-one years, who is made a party respondent, and a widow, viz.,—the said Mary Olyphant Curtis, who is now the wife of Philip Curtis and is not of sound mind, who is also made a party respondent; hence at the date of the making of the said testator's last will the said first five named respondents were the only living chil-

dren of the said Katharine Temple Emmet, deceased, and on said last named date the respondent Mary Olyphant Emmet was the only issue of the said Richard Stockton Emmet, deceased.

The complainants, as executors, now hold in their hands personal estate of the said testator which is sufficient not only for the payment of all the expenses of the administration thereof and of the specific and pecuniary legacies bequeathed in the testator's will, but also for the payment of a very considerable sum of money to each of the persons who are named or designated in the 13th clause of said will as residuary legatees thereunder.

The clauses of the testator's will involved in this bill are the fifth, eighth, ninth and thirteenth.

The fifth clause is in part as follows : "Also I give and bequeath the sum of five thousand dollars to each one of the following named nieces of my late wife, to be paid to each of them as soon as practicable for the sole use and benefit of each, and also five thousand dollars to the children of Katharine Temple Emmet, a deceased niece of my wife. Said living nieces are," and then follow the names of the living nieces.

The eighth clause is in part as follows : "In case of the death before my own decease of any of the legatees herein before named or designated, then everything by this will given to the person so dying shall in every instance go and I give devise and bequeath the same, to the kindred of such person at the date of my death according to the present statutes of Rhode Island prescribing the distribution of estates of persons dying intestate. . . . "

The ninth clause is in part as follows : " I give and bequeath also as follows : . . . The Buhl clock, so-called, with the two candelabras to match it, on the mantel of large drawing room in my dwelling house, to the children of Katharine Temple Emmet before named. . . . "

The thirteenth clause of said will is as follows : "All the rest residue and remainder of my estate belonging to me at the time of my decease, whatsoever and wheresoever it may be and whensoever acquired I give and devise and bequeath

equally and absolutely to the legatees named or designated in the fourth article and the fifth article of this will and to their heirs ; the children of Anna Benedict to be deemed a class entitled to one share, and the children of said Katharine Temple Emmet to be also deemed a class entitled to one share ; and the share of said Samuel Benedict to be held and kept in trust by said Dexter O. Tiffany, upon the trusts provided in the sixth article hereof relative to said Samuel."

The bill alleges that the said respondents William T. Emmet, Katharine E. Keogh, Elizabeth L. Emmet, Grenville T. Emmet and Eleanor T. Emmet claim that they and they only are entitled to all of the said legacies, which by the fifth, ninth and thirteenth clauses of the said testator's last will are given to "the children of Katharine Temple Emmet, a deceased niece of" the testator's wife ; that the said Mary Olyphant Emmet claims that under the eighth clause of said will she is entitled to that share of the testator's estate to which her said father, the said Richard Stockton Emmet, would have been entitled if he had not died before the death of the said testator ; and that the said Mary Olyphant Curtis claims that under said eighth clause of said will she is entitled to one-third part of the share of the testator's estate to which the said Richard Stockton Emmet would have been entitled if he had not died before the date of the death of the said testator.

The bill also alleges that the complainants are threatened with actions at law by the said first five abovementioned respondents on the one hand, for the full amount of the legacies which are given to the said "children of Katharine Temple Emmet" by the fifth, ninth and thirteenth clauses of said will, and on the other by the said Mary Olyphant Curtis and the said Mary Olyphant Emmet in respect of their respective claims hereinbefore set forth ; and all of the said respondents pretend that the complainants are withholding from them respectively the said legacies.

The bill prays the court to answer the following questions, viz :—

1. "Who are the persons who are comprised under the designation of 'children of Katharine Temple Emmet, a deceased

niece of the testator's wife, as used in the fifth, ninth and thirteenth clauses of said last will and testament?

2. "Does the expression which is contained in the eighth clause of said last will and testament as follows,—'in case of the death before my own decease of any of the legatees hereinbefore named or designated,' include the case of the death of an alleged legatee who had died before the date of the making and execution of said last will and testament?

3. "What is the meaning of the expression in said eighth clause as follows,—'the kindred of such person at the date of my death according to the present statutes of Rhode Island prescribing the distribution of the estates of persons dying intestate?'

4. "Is the widow of the deceased Richard Stockton Emmet entitled to receive any portion of the testator's said estate, under the language of said eighth clause which is mentioned in the preceding question?

5. "Is the said respondent the said Mary Olyphant Emmet entitled to any portion of the said testator's estate, and if so, what portion?

6. "Is the said respondent, the said Mary Olyphant Curtis, entitled to any portion of the said testator's estate, and if so, what portion?"

The bill also prays that the respondents might be enjoined from prosecuting any actions at law against the complainants.

Guardians *ad litem* having been appointed for the respondents who are not *sui juris*, and all the respondents having answered, there being no disputed questions of fact, the several questions of law presented by the bill are now before the court on bill and answers.

In *Williams* v. *Knight*, 18 R. I. 333, 336, this court said : "The word children as it is ordinarily used in a will means immediate descendants, that is, of the first generation. It does not include grandchildren unless it is necessary to give it that meaning in order to give effect to the will, or unless the testator has clearly shown by other language in his will that he does not use the word in its ordinary sense, but intends it to have a more extended signification.  .  .  .  In the case of

the bequest before us, it is not necessary to give effect to the disposition to construe the word children as including grandchildren, nor do we find language in the will to indicate such an intention on the part of the testatrix."

In *Tillinghast* v. *D'Wolf*, 8 R. I. 69, a testator devised certain property to trustees for the separate use of his daughter, Catharine, for her life, and to hold the same after her death, for the use of her children and their issue ; but in case there should be no issue, he directed that the provision made for his said daughter, *i. e.*, the estate devised to her for life, should be equally divided among all his children, and one of his grandchildren, viz., his grandson James D'Wolf,—or their heirs. Three other grandchildren, viz., the children of the testator's deceased daughter, Mary Ann Sumner, claimed to be entitled under the devise.    This court, speaking through Brayton, J., *inter alia*, said :   "We cannot construe the word '*children*' to include '*grandchildren*,' when there are persons to answer the description of children, unless (which is not the case here) there be some ambiguity in the language rendering it necessary, or unless the testator's intent, expressed in other parts of the will, could not otherwise be satisfied.   .   .   .   The counsel has suggested an insuperable difficulty in the way of this claim, when he says, 'the only possible ground of objection against the claim of these children of Mrs. Sumner is, that they are not specially mentioned in this clause.'   The rule is that the legatee must answer the description given by the testator, or he cannot take.   The claimants are neither named nor described in any way.    In such case, there cannot be said to be any ambiguity ; and unless there is, it cannot be aided by the context, or by parol evidence.    We cannot substitute the name of a devisee, or a description of one, any more than we can a description of the property devised ; and clearly we could not do that.    We see no way in which these claimants can take."

In *Re Will of Isaac Reynolds*, 20 R. I. 429, the question was as to the scope of the word *children* as used in a will then under consideration, and this court, speaking through Matteson, C. J., said :   "It is unnecessary to give the word 'chil-

dren' any other than its ordinary signification to give effect to
the will in the present instance, and we see nothing in it to
indicate any intention of the testator to use the word in a more
extended sense. The effect of the fifth clause is to create a con-
tingent remainder in the real estate and a contingent gift of
the bank stock on the decease of the life tenant, in and to his
children living at that time. The language is too clear to
leave room for construction. Our opinion is, therefore, that
the word 'children' as used in the fifth clause of the will,
means children of the first generation, and that it does not
have the more extended meaning of the word 'issue' or the
word 'descendants.'"

In *Winsor* v. *Odd Fellows Beneficial Association*, 13 R. I.
149, the by-laws of a benevolent association provided that on
the death of a member a sum of money should be paid "to
the widow of such member if there be one ; if he leaves no
widow, then to the child or children or their lawful guardian
for them, share and share alike. Should the deceased mem-
ber leave no widow, child or children, the money shall be paid
to such person as he may have designated in writing." Upon
the question as to the scope of the meaning of the word chil-
dren as used in the by-law, this court, speaking through Dur-
fee, C. J., said : "We should be very much inclined to hold
that the word 'children,' as used in article 6, section 1, of the
by-laws of the defendant association, is broad enough to in-
clude grandchildren, the children of a deceased child, such
grandchildren to take in lieu of their parent by representa-
tion, if we could find in the charter or by-laws any language
to warrant this construction, inasmuch as this construction is
completely consonant with the spirit and purposes of the asso-
ciation. We have not, however, been able to find any such
language. We know of no precedent in point. The only
cases which we think of which afford an analogy are cases re-
lating to the use of the word in wills. Those cases hold that
the word is to be understood in its simple and primary signifi-
cation, when it can be so understood, and that it cannot be
held to include grandchildren unless it is necessary to hold so
in order to give effect to the words of the will, or to the evi-

dent intent of the testator." (Citing cases.) "These cases do not give countenance to the construction for which the defendant contends."

See also *Palmer, et al.,* v. *Horn, et al.,* 84 N. Y. 516, and 5 A. and E. Ency. of Law, 2nd ed. 1085, and note containing a long list of cases in which the word "children" was held not to include grandchildren or remoter descendants ; also *id.* 1087, and note giving a number of cases where the word "children" has been held to include grandchildren and remoter descendants.

In view of the law as hereinbefore indicated, a careful examination of the will in the case at bar fails to reveal anything that would justify us in extending by construction the meaning of the word "children" as used in said will, beyond its common and ordinary signification, and hence in our opinion that word cannot be construed in this case as including grandchildren of the said Katharine Temple Emmet.

As to Mary Olyphant Emmet, the further question remains as to whether she can take by virtue of the provisions of the eighth clause of the testator's will. At the date of the making of the testator's will, her father, Richard Stockton Emmet, had deceased and was consequently *not* a legatee, in the words of that section—"hereinbefore named or designated." We think the word "children," as used in the fifth, ninth, and thirteenth clauses of the testator's will means only children living at the time of the making of the testator's will. We think the view taken by the court of appeals of Kentucky in *Sheets, et ux.,* v. *Grubb's Executors,* 4 Metc. 339 (Ky.) is a sound one. In that case the testator devised to the children of his sister, Mourning Boone, an equal share with the balance of his brothers and sisters, of his estate not otherwise disposed of. Mrs. McClinsey, one of the children of Mourning Boone, died before the death of the testator, and, as must be assumed, the court says, before the execution of the will, leaving an only child, Mrs. Sheets, and the question was whether Mrs. Sheets could take by virtue of a statute substantially like the provisions of the eighth clause of the will in the case at bar. The court, by Duvall, C. J., said :—"The entire argument for the

appellants" (Mrs. Sheets and her husband) "proceeds on the assumption that the mother of Mrs. Sheets was embraced in the devise to ' the children of Mourning Boone,' and was, therefore, a *devisee*, or *legatee* under the will. If this assumption was maintainable, there could be no doubt that the statute referred to would apply, and would sustain the claim asserted by the appellants. The only question to be decided, then, is whether Mrs. McClinsey was a devisee or legatee under the will of the testator. The devise was, as we have seen, to the *children* of Mourning Boone. Whom did the testator intend to include in this general designation? Certainly those of the children who were then living, and not those who had previously died. The presumption that the testator intended to give any portion of his estate to persons he knew were not then in existence, is altogether inadmissible."

In our opinion the said Mary Olyphant Emmet is not included within the meaning of the eighth clause, and can take nothing under it.

As to the respondent Mary Olyphant Curtis, we utterly fail to see any ground for her claim. She is neither a child nor a grandchild of the said Katharine Temple Emmet; neither was her husband, the said Richard Stockton Emmet, a legatee under the testator's will; and, even if he had been, it is very far from being clear that she would be embraced within the meaning of the word "*kindred*," used in the eighth clause, for kindred are defined as being relations by blood, either descendants, ascendants, or collaterals, and a husband or wife of a deceased, therefore, is not his or her kindred. See 2 Bouv. Law Dict. title Kindred, 92, and cases cited.

To the several questions put to us by the complainants we reply as follows, viz.:—

To the first question: The several persons who are comprised under the designation "children of Katharine Temple Emmet," etc., are the respondents William T. Emmet, Katharine E. Keogh, Elizabeth L. Emmet, Grenville T. Emmet, and Eleanor T. Emmet.

To the second question: No.

To the third question: The expression in the eighth clause

of the will referred to has no reference or application to the respondent, Mary Olyphant Emmet and Mary Olyphant Curtis, or either of them, and as all the other children of the said Katharine Temple Emmet are alive, we see no necessity of considering the eighth clause further as a practical question in this case.

To the fourth question : No.

To the fifth and sixth questions : No, not to any portion.

(2)    The complainants pray, in addition to the instructions asked for, that the respondents be enjoined from bringing actions of law against them for their legacies.    We see no necessity for such an injunction.    Now that the will has been judicially construed, if the complainants do not pay the legacies to those entitled to them in due time they would be properly subjected to suits, should such be brought against them.

As to Mary Olyphant Emmet or Mary Olyphant Curtis bringing actions which they or those representing them must know would fail and thus subject them to costs should they become *sui juris,* or, if not *sui juris,* their next friends to costs which such next friends would be obliged to pay out of their own pockets without hope of re-imbursement therefor, we deem so highly improbable as not to be worthy of consideration, and therefore the prayer for an injunction is denied.

(3)    Inasmuch as the instructions sought are sought by and for the benefit of the executors in settling the estate and the expense thereof is a proper charge upon the estate, we do not think the respondents should be mulcted in costs, and hence the complainants should recover no costs.

Decree accordingly.