WILLIAM E. TABER, Trustee, *vs.* CHARLES H. TALCOTT
ET AL.

JUNE 13, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ

(1) *Wills. Trusts. Contingent Equitable Remainders.*

By a testamentary trust testator directed the payment of the income of
the estate to his wife for life, and after her decease to his three children,
and upon the decease of one or more of them to the survivors and
survivor of them, equally, and upon the death of the survivor of them
or upon the death of the wife in case she survived all the children, to
convey the trust estate to his heirs at law.

Two parcels of real estate were sold by the trustees by authority of acts
of the General Assembly, which provided that the proceeds of the sales
should form a part of the trust estate and "be finally disposed of as
directed in said will and as if no such sale . . . had been made." Part
of the estate in the hands of the trustee represented the proceeds of
such sale of the real estate and a third parcel of real estate still formed
a part of the trust estate.

*Held,* that the will gave contingent equitable interests in fee to those
persons who would answer the description of his heirs at law at the
time of the death of the last survivor of his wife and children, if he
had just then died intestate and without issue.

*Held,* further, that as the will made no difference in the disposition of
real and personal property, it was the duty of the trustee to convey
all of the personal property of the trust estate to the persons who on
the date of the death of the last survivor of the wife and children
answered the description of the heirs of testator, the same to be
divided among them in accordance with the statute of descent and
distribution.

*Held,* further, that in the absence of any evidence that there was any
difference in the law of Connecticut as to descent, land in that State
would follow the same course as to division.

(2) *Vested and Contingent Remainders.*

While the law favors the vesting of estates immediately upon the death
of the testator, and will not regard the remainder as being contingent,
in the absence of a clear intent on the part of testator to that effect,
nevertheless this preference of the law is subordinate to the principle
that the written expression of the testator taken in its natural sense
and use and applied to existing facts must control.

BILL IN EQUITY for construction of will. Certified under Gen. Laws, 1909, Cap. 289, Sec. 35.

STEARNS, J. This is a bill in equity brought by William E. Taber, sole trustee under the will of Hezekiah Allen, praying for a construction of the will and other relief incident to a distribution of the trust estate created thereunder, and a discharge of the trustee.

By a decree of the Superior Court the cause was certified to this court, in accordance with Chapter 289, Section 35, General Laws, R. I., and the following questions are submitted to this court:

" 1. Did the said will of Hezekiah Allen give to the persons who answered the description of his heirs at law at his death vested equitable interests in fee in the trust property, or did it give contingent or executory equitable interests in fee to those persons who would answer the description of his heirs at law at the time of the death of the last survivor of his wife and children, if he had just then died intestate and without issue?

" 2. To what class or classes of persons and in what proportions, was it the duty of the trustee under said will on May 8th, 1912, to convey the part of the personal property in his possession that represented the personal property that was left by said Hezekiah Allen to the trustees under his will?

" 3. To what class or classes of persons, and in what proportions, was it the duty of said trustee on said date to convey the part of the personal property in his possession that represented the proceeds of the above mentioned sales of real estate?

" 4. To what class or classes of persons was it the duty of said trustee on said date to convey the said woodlot in the town of Enfield, Connecticut? "

The first question is the principal one and the others are only subsidiary.

Hezekiah Allen, a resident of Cranston, Rhode Island, died in 1872 leaving surviving a widow, Emeline Allen, and three children, Hezekiah Allen, Emily H. Allen and Elvira E. Allen, five brothers and sisters and the descendants of two deceased brothers. The widow died intestate in 1879 and each of the children died subsequently, intestate and without issue; Elvira E. Allen, the survivor of the children died May 8, 1912.

The respondents, Charles H. Talcott *et al.*, are the persons, or in some cases the successors in interest of the persons, who, being descendants of brothers and sisters of Hezekiah Allen, answered the description of his heirs at law on May 8, 1912, and as such claim that the equitable estate in remainder to the heirs at law was contingent and did not become vested until the death of the last surviving child, and that they are entitled to a conveyance of all the trust property as it existed at that date. The opposing respondents, C. Osgood Swan *et al.*, claim solely as successors in interest to the three children of Hezekiah Allen, and assert that an equitable remainder in fee vested in these three children at his death. They are mainly the heirs and next of kin of Elvira E. Allen on her mother's side.

The second clause of the will is as follows: " Second, I give, devise and bequeath all the rest, residue and remainder of my estate both real and personal of which I shall die seized and possessed and wherever the same may be situate, to Henry J. Spooner, John D. Thurston and Jesse P. Eddy, all of the City of Providence.

" To have and to Hold the same to them and to the survivors and survivor of them and to their successors and assigns. In Special Trust nevertheless, for the purposes following:

" The said Trustees and their Successors in said Trust shall receive the rents, profits, issues and income of the property vested in them as aforesaid and therewith make

all necessary repairs and improvements and pay all taxes and other necessary charges and expenses in and about the same, and after all such payments and reservations are deducted, shall at such times and places annually and in such proportions as they may deem expedient, pay over the residue of such rents, profits, issues and income to my wife, Emeline Allen, for and during the term of her natural life, and this provision I make for her in lieu of her dower in my estate.

"After the decease of my said wife I direct my Trustees above named and their successors in said trust to pay over in manner aforesaid, said rents, profits, issues and income (after the deductions therefrom as above provided for) to my three children, Hezekiah Allen, Elvira E. Allen and Emily H. Allen, and upon the decease of one or more of them, to the survivors and survivor of them, equally, and upon the death of the survivor of them or upon the death of my said wife in case she shall survive all my said children, I direct my said Trustees and their successors in said trust to discharge themselves of the trust herein created by making full and absolute conveyance of such property and estate as they shall at that time hold in trust under this will, to my heirs at law and to their heirs, executors, administrators and assigns forever."

The trustees, in their discretion, under the advice and direction of the probate court, were authorized to sell any portion of the trust estate, either real or personal, and to reinvest the proceeds in such manner as the trustees should deem most for the interest of said *cestui que trust,* the reinvested estate to be held by them subject to the same trust. Two of the parcels of real estate located in this State, were sold by the trustees by authority of acts of the General Assembly, which provided that the proceeds of the sales should form a part of the trust estate and " be finally disposed of as directed in said will and

as if no such sale . . . had been made." A part of
the personal property now held in trust represents the
proceeds of the sale of these two parcels of land. The
third parcel which is mentioned in the will and which is
located in Enfield, Connecticut, still forms a part of said
trust estate.

(1)   Question one presents this issue : Are the heirs of Heze-
kiah Allen to be determined as of the time of his death in
1872, or as of the time of the death of the surviving life
beneficiary, Elvira E. Allen, in 1912?

While it is true, as stated by Tillinghast, J., in *Ross* v.
*Nettleton,* 24 R. I., p. 127, " that the law favors the vest-
ing of estates immediately upon the death of the testator,
and will not regard the remainder as being contingent, in
the absence of a clear intent on the part of the testator
to that effect," nevertheless it has been uniformly held
that this preference of the law is subordinate to the fun-
damental principle of construction that " the *written ex-
pression* of the testator taken in its natural sense and use,
and applied to existing facts must control." *Ogden, Pe-
titioner,* 25 R. I. 373, at p. 374. For the respondents,
*Swan et al.,* the case in Rhode Island principally relied
upon, is *Kenyon, Petitioner,* 17 R. I. 149. In regard to
(2) cases from other jurisdictions cited, this court in the case
of *Melcher, Petr.,* 24 R. I. 575, at p. 578, made the follow-
ing comment which is as applicable now as at the time
when it was made : " Cases upon the construction of wills
and upon vested and contingent remainders have been
too numerous and conflicting for an attempt to review
or to reconcile them." This difference in the authorities
arises not so much in regard to the rules of interpreta-
tion, but more in regard to the relative importance to be
given to the different rules, and the law is well settled in
this State that it is the expressed intention of the testa-
tor, if that can be clearly discerned, which is to govern.

In the case at bar although there are many points of

similarity to the *Kenyon* case, *supra,* yet there are cer-
tain differences which clearly distinguish the two cases.
In that case A. devised and bequeathed his entire estate
to B. and his heirs for the life of C., A.'s son, in trust for
C., and then gave and bequeathed after the death of C.
" all the property affected by the above trust which shall
then remain, to, my own right heirs." It was held that
B., the trustee, took an estate for the life of C. and that
C., who was sole heir of A., at A.'s death took a vested
remainder in fee. In the *Kenyon* case, as in the one at
bar, it was urged that the language used was such as
showed an intent to give the son C. only an estate for life
and also that C. could not take a vested remainder under
the second clause, because the clause was not intended to
take effect until after his death, and that C. was given
not " the remainder of the estate," but " all the property
affected by the above trust which shall then remain," and
although Durfee, C. J., recognized the force of the argu-
ment in favor of holding the remainder to be contingent,
he thought that the precedents were against it, and de-
cided that the remainder was vested. In reaching this
conclusion it is apparent that the learned judge gave
great weight to the words " I give and bequeath " as
used in the last clause which carried the remainder. The
court says, at page 159: " The words ' I give and be-
queath ' in a testamentary paper," says Chief Justice
Shaw in *Eldridge, Adm'r,* v. *Eldridge, Executor,* 9 Cush.
516, 519, " import a benefit in point of right to take effect
upon the decease of the testator and the proof of his will,
unless it is made in terms to depend on some contingency
or condition precedent." The court, at page 163, re-
affirms the established rule of construction " that the in-
tention of the testator must govern, and that, when that
appears, it overrides all rules and precedents, making its
own law. This is generally so, but the intention that has
this effect is the intention testamentarily expressed; and

when the testator uses familiar legal words, he must be presumed to have used them in their ordinary meaning till the contrary clearly appears." In the case at bar, however, the words " I give and bequeath " are not used to carry the remainder, but the following language is used, " I direct my said Trustees and their Successors in said trust to discharge themselves of the trust herein created by making full and absolute conveyance of such property and estate as they shall at that time hold in trust under this will, to my heirs at law." The primary object in the testator's mind was to protect his widow and children during their lives; they were to have the *income* only of the estate with no power to touch the principal. By giving to the trustees the power to sell and reinvest the proceeds for the benefit of the *cestui,* the testator must have had in mind the possibility of loss or gain in the trust fund, but whatever the result the share of each child in the income was dependent on two contingencies: first, that such child should survive the widow only; second, that the child or children who survived took the share of the income of any child who should die after the death of the widow. Having thus protected the widow and children during their lives, the mind of the testator is then directed to the time of the decease of the last survivor, and his main object accomplished, he then has in mind the closing of the trust and directs that what is left (either more or less) shall be conveyed to his heirs whoever they may be at the time of the closing of the trust. The use of the word " heirs " in connection with the direction to the trustees to convey what remained of the trust property at the death of the last survivor of the testator's wife and children would seem naturally to show that his mind was directed to that particular time and not to the time of his own death, and that his intention was that his heirs should be ascertained at the time of the distribution of the trust estate and not before; in

other words, that the *prima facie* meaning of the word
" heirs " should yield to the real intention of the testator
as manifested in the words of his whole will.

The question as to the time for ascertaining the members of a class described as the testator's " heirs " was
before this court in *DeWolf* v. *Middleton*, 18 R. I. 810,
814 (1893), where a testator devised land to his
daughters, their heirs and assigns and " on both their
deceases " without issue, to his heirs, and it was held that
the heirs were to be determined as of the *date of the death
of the surviving daughter,* and not as of the date of the
testator's decease.　Stiness, J., said (p. 815) : " While
the general rule is that the heirs of a testator are to be
taken from the time of his death, yet the rule gives way
to a contrary intent to be found in the will."　Again in
*Tyler, for an opinion,* 30 R. I. 590 (1910). In that case the
testator devised to his granddaughter, C., the residue of
his estate, " to her, her heirs and assigns forever; " and
" if said C. should die without leaving issue born of her
own body, then in that case I give, devise and bequeath my
said estate to my heirs at law."　C. died intestate without
leaving living issue.　*Held,* that the heirs of the testator
were to be determined as of the date of the death of C.

In the case of *Branch, Trustee,* v. *DeWolf,* 38 R. I. 395,
decided in 1915, the testator devised his house to his wife
for life, then to his niece for life, then to a grandnephew
on condition of his taking and bearing the name of the
testator, but if he rejected the condition, the house was
to be sold, and " the proceeds are then to be thrown with
the personal property, and the whole is to be divided between my sisters if alive; or their heirs, if dead, in equal
proportions."　The grandnephew declined to take testator's name and rejected the conditional gift.　It was held
that the word " heirs " as used in this will, meant the
heirs of testator's two sisters who were in being at the
time when the gift came into effect, upon the rejection

of the devise by the grandnephew, the will showing the intent of the testator to fix that time for ascertaining the "heirs" who would then be entitled to distribution of the fund; that the word "heirs" was not used in its technical sense, but as the estate to be divided was in the form of personalty, it would be construed to mean those entitled to succeed to personal property in case of intestacy.

In *Luttgen, Trustee,* v. *Tiffany. et al.,* 37 R. I. 416, decided in 1915, the testator by his will bequeathed his estate in trust, to pay over the income to the widow during her life, with bequest over of " all of my estate which may be remaining in the hands of my said trustee at the time of the decease of my said wife, to my children, share and share alike, and should any of my children die, previous to their mother having child or children my will is, that the issue of such deceased child, shall take from my estate the share its parent would have taken had that parent survived its mother, and that subject to these provisions my estate shall vest in my children aforesaid in fee simple." The court held that the intention of the testator was not to give any present estate or interest to the children at the time of his death, but to postpone the gift to them until the decease of the widow and that during the lifetime of the widow the children had only a future possibility contingent upon their survival.

It is to be noted that although the words " I give, devise and bequeath " were used to convey the remainder and that the testator specifically provided that ".subject to these provisions my estate shall *vest* in my children aforesaid in fee simple," the court held that the gift in remainder, was contingent both as to the time of vesting, and as to the persons in whom it would vest.

For the reasons stated our answer to the first question submitted to us is that the will of Hezekiah Allen did not give to the persons who answered the description of his

heirs at law at his death vested equitable interests in fee in the trust property, but that it did give contingent equitable interests in fee to those persons who would answer the description of his heirs at law at the time of the death of the last survivor of his wife and children, if he had just then died intestate and without issue.

As the will provides for no difference in the disposition of real and personal property, our answer to questions 2 and 3 is the same, namely, that it was the duty of the trustee on May 8, 1912, to convey all of the personal property of the trust estate in his possession at that time to the persons who on that date answered the description of the heirs of Hezekiah Allen, the same to be divided among them in accordance with the statute of descent and distribution.

As to the fourth question relating to land in Connecticut, our answer is the same as to the preceding questions. This piece of property is of comparatively small value, and at the hearing of this cause no claim was made by counsel that there was any difference in the law of Connecticut as to descent, from the law of this State, and in the absence of any evidence on this point we assume that there is no difference in the laws of the two jurisdictions.

The parties may present to the court a decree in accordance with this opinion on or before the 18th day of June, 1917.

*Edward A. Stockwell,* for complainant.

*Gardner, Pirce & Thornley, Murdock & Tillinghast,* for Charles H. Talcott et al.

*Wm. W. Moss, John A. Tillinghast,* of counsel.

*Swan & Keeney,* for Ida J. Clark and Respondents Swan.

*Francis B. Keeney,* of counsel.