212 A.2d 53.

MANUFACTURERS NATIONAL BANK OF TROY, NEW YORK, *as Trustee u/w of Daisy McC. Clarke vs.* ANNA RYAN McCOY *et al.*

JULY 14, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a bill in equity brought in the supe-
rior court for the construction of and instructions in rela-
tion to a will. When the cause was ready for hearing on
the final decree it was, as required by G. L. 1956, §9-24-28,
certified to this court for determination. The complainant
is the trustee of a trust fund created by the third clause
of the will of Daisy McC. Clarke, late of the city of New-
port, hereinafter referred to as the testatrix.

The complainant asks us with reference to clause third
of that will to instruct it as to those entitled to receive the
principal, the unapplied income, and the income collected
subsequent to the death of Josephine Corey, the life tenant.

The third clause in pertinent part reads as follows:

"Third. I give and bequeath to the following named
as bequests to them respectively, to wit:
" * * *

"To my cousins-german on my father's side, namely the
children of my father's brothers and sisters the
sum of Fifty thousand dollars ($50,000) to be di-
vided between them equally share & share alike,
the child or children of any deceased cousin-german
as aforesaid to take the share which such deceased
would have taken if living.
"To my Executor hereinafter named the sum of Fifty
thousand dollars ($50,000.) in trust to invest the
same and pay and apply the income there from to

and for the use of my aforesaid cousin Josephine Corey during the term of her natural life. And upon her death I give and bequeath the said trust fund of Fifty thousand dollars and all unapplied income to my said cousins-german on my father's side to be divided between them and the child or children of any of them who may have died before the termination of said trust in the same proportions as provided in the last pre-ceding clause hereof in respect of a legacy to such cousins-german."

The parties accept as the meaning of the term "cousinsgerman" the definition given in Webster's Third New International Dictionary, p. 524, "related by descent from a common ancestor, having the same parents," and for convenience further reference to "cousins-german on my father's side" shall sometimes hereinafter be by the word "cousins."

Our recital of the facts is limited to those having relevance to the issue before us. There were living at one time or another during the lifetime of the testatrix five cousins, namely, Robert P. McCoy, Susan D. McCoy, Jay S. McCoy, Kate L. McCoy Wilcox, and Mary F. Bonce. All survived the testatrix excepting only Mary F. Bonce who died prior to the time the testatrix executed her will, and of the remaining four, all predeceased the life tenant and without children, except for Kate L. McCoy Wilcox who is presently living and a respondent.

Robert P. McCoy died testate and his widow, who died without known heirs or legatees, was the sole beneficiary under his will; Susan D. McCoy died intestate and unmarried leaving as her heirs and next of kin, Jay S. McCoy and Kate L. McCoy Wilcox; Jay S. McCoy died intestate leaving as his heirs and next of kin his widow and Kate L. McCoy Wilcox, the widow since having deceased testate.

Mrs. Bonce's only living lineal descendants at her death were two grandchildren both of whom survived the testa-

trix but predeceased the life tenant, one leaving two surviving children and the other a widow but no issue.

It is represented that all known parties who may have any interest have been joined as parties respondent. The interests of persons not in being or unascertainable generally, of those who claim through the estate of Robert P. McCoy's widow, and of those who are the unknown heirs of the grandchild of Mrs. Bonce who died leaving a widow but no issue, are represented by a guardian ad litem as well as are the interests of those who may be in the military service. A decree pro confesso was entered as against the executor under the will of Jay S. McCoy's widow.

The initial question is whether the bequest under consideration was a class gift. On that question, as on others relating to construction of wills, our obligation is to ascertain, if possible, the dispositive intent expressed in the will read in its entirety and in the light of the circumstances of its formulation. Where ascertainable, if not contrary to law, we give it effect. *Rhode Island Hospital Trust Co.* v. *Thomas,* 73 R. I. 277, 281; *Rhode Island Hospital Trust Co.* v. *Proprietors of Swan Point Cemetery,* 62 R. I. 83, 94; *R. I. Hospital Trust Co.* v. *Calef,* 43 R. I. 518, 521. It is only when in the search we find, instead of evidence of intention, ambiguity or doubt as to intention or language equally susceptible of conflicting inferences as to what was the dispositive intent that we resort to the rules of construction. *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169. When obscurity exists and the constructional aids are invoked, they are not applied as rules of positive law, or for the purpose of discovering an undisclosed intention of the testator, but to test an otherwise obscure intention by the application of constructional preferences for the purpose of reaching a judicial determination. *Rhode Island Hospital Trust Co.* v. *Thomas, supra,* at p. 281. This process, according to some of the text writers, involves, within the context of the testamentary language and the circum-

stances attendant upon the instrument's formulation, an ascertainment of what would have been the probable intention of the average testator faced with the particular problem. 2 Scott, Trusts (2d ed.) §164.1, p. 1160; 5 American Law of Property §22.3, p. 248.

In our judgment the testatrix using familiar legal language clearly demonstrated an intention to benefit a class. Her gift was of an aggregate sum to "my said cousins-german on my father's side to be divided between them and the child or children of any of them who may have died before the termination of said trust * * *." By that language the number of generally-described possible takers, although then uncertain, would at some future time become determinable and at the same time the share of each taker could be ascertained. The amount of the share would, of course, depend upon the ultimate number of takers. In the absence of a clearly manifested contrary intention, and there is none here, we presume that the testatrix selected her language intending that it be given its ordinary legal meaning. *Starrett* v. *Botsford*, 64 R. I. 1; *Dodge* v. *Slate*, 71 R. I. 191. So construed, the beneficiaries of her disposition constitute a group and her will speaks the language of a class gift. *Hazard* v. *Stevens*, 36 R. I. 90, 99; *R. I. Hospital Trust Co.* v. *Calef, supra*.

In our judgment the primary members of that group were her cousins, and the children of a cousin were to benefit only if their parent predeceased them. A fair reading of the two paragraphs of the third clause permits no other reasonable construction.

We conclude, therefore, that the testatrix intended in clause third to make a gift to a class consisting of her cousins with a substitutional gift to the child or children of an original taker, the alternative to take effect if a cousin predeceased the time fixed for distribution leaving a child or children surviving. We have similarly concluded as to wills containing analogous language. *In re Norris,*

46 R. I. 57; *Tetlow* v. *Capron,* 49 R. I. 162, 167; *Rhode Island Hospital Trust Co.* v. *Thomas, supra; R. I. Hospital Trust Co.* v. *Calef, supra.*

Although the parties argued the question of the nature of the gift and the composition of the class, their disagreement thereon was not serious, excepting insofar as the effect our determination thereof might have on whether cousins surviving the effective date of the will took an indefeasibly vested remainder subject to being divested in the event of death leaving a child or children surviving or to partial divestiture in the share to be taken if the class were to increase because of the birth of a cousin subsequent to the effective date of the will. It is to the time of the vesting of the gift to the class that we now direct our attention.

On that problem the testatrix could have manifested her intention in such a way as to make unnecessary resort to a suit for construction. The difficulty, however, is that a reading of the will leaves doubt instead of reasonable certainty as to whether the testatrix intended to condition a cousin's right to take upon survival until the end of the preceding interest of the life tenant. The problem is not unique. It has concerned us frequently in the past.

The respondent Kate L. McCoy Wilcox. the only cousin who survived the life tenant, while citing *Taber* v. *Talcott,* 40 R. I. 338[1], and *Industrial Trust Co.* v. *Wilson,* 61 R. I.

---

*Footnote 1.* In *Taber* v. *Talcott* the will provided that the income from the trust be paid to the testator's wife for life and then to his three children or the survivors or survivor of them for their lives, and that upon the death of the last survivor of the wife and children the corpus be conveyed "to my heirs at law and to their heirs, executors, administrators and assigns forever." The holding was that the gift to heirs was contingent and that the eligible takers were determinable as of the death of the last surviving life tenant. The distinguishing features were that the class gift is to "heirs" and that included among the life tenants were some who would be heirs were the gift to class held to have vested at the testator's death. See, however, *Starrett* v. *Botsford,* 64 R. I. 1, where on not markedly different language the court enunciated as a rule of con-

169[2], relies principally upon *Luttgen* v. *Tiffany,* 37 R. I. 416, as authority for her contention that the class gift did not vest until the death of the life tenant.

In that case, using language substantially the same as did this testatrix, the residuary estate was left in trust to pay the income therefrom to the widow for life and upon her death the testator gave, devised, and bequeathed "all of my estate which may be remaining in the hands of my said trustee at the time of the decease of my said wife, to my children * * * share and share alike, and should any of my children die, previous to their mother having child or children my will is, that the issue of such deceased child, shall take from my estate the share its parent would have taken had that parent survived its mother * * *."

The court reviewed at length many of our earlier decisions, and although conceding at page 422 that "the will is not so clear in all respects as might be desired" nonetheless held that the testator's "plain indication of the intention" was that the gift should not vest until the death of the widow. That "plain indication of the intention" was found in the fact that the estate *remaining* in the hands of the trustee at the time of distribution might, because of the broad power conferred upon the fiduciary to invest

struction that a remainder interest to a class consisting of the testator's heirs, absent a clear indication in the will to the contrary, vests at the effective date of the will and not upon the termination of the intervening estate.

*Footnote 2.* In *Industrial Trust Co.* v. *Wilson,* the language pointed to is at p. 183 where the court said,
"* * * where a gift is made to a class following an intervening life estate to a third person, *membership* in the class is determined at the period of distribution which in such a case is the expiration of the preceding life estate." (italics supplied)
What is quoted is, of course, a rule of construction, but it is referable to the principle that membership in a class may increase in size pending the time fixed for the distribution of a class gift of a future interest. It is inapposite on the question of when a gift of a remainder interest to a class vests.

162

and reinvest, vary from what it had been at the time of the testator's death. Additionally, the court found that the existence of the substitutional gift to issue made the ultimate takers impossible of ascertainment until the death of the widow. These were the principal factors upon which the court relied in holding that the testator had manifested an intention "not to give any present estate or interest therein to his children at the time of his death, but to postpone the gift to them until the decease of the widow."

If *Luttgen* were our last word on this problem we feel there is at least question as to whether we would follow it. In that case the court in its search for indications of dispositive intention gave undue emphasis to those provisions which made possible a change in the nature of the corpus and made impossible the determination of ultimate membership in the class until the death of the life tenant. Beneficial enjoyment of a testamentary bequest, however, is necessarily postponed whenever there is a future interest, and a class gift definitionally is one where the takers are unascertainable until a future time. Moreover, whenever enjoyment of a remainder interest is postponed, the probability is that the value of the corpus will change during the period intervening between the effective date of the instrument and the time fixed for distribution. The testamentary provisions relied on in *Luttgen*, without more, are insufficient indicia upon which a reasonable judgment should hinge as to the existence and nature of a testator's intention.

In substance, these were the considerations which undoubtedly motivated the court in *In re Norris*, 46 R. I. 57, when, speaking through Chief Justice Sweetland, a participant in the *Luttgen* decision, it said at page 70:

"After careful consideration and analysis we think the cases show a tendency to construe, upon slight indications, expressions of futurity as referring to the substance of a gift rather than to its enjoyment. They are

not in harmony with the earlier decisions of the court or the later cases * * *. In our opinion the tendency appearing in *Melcher, Petitioner,* and *Luttgen* v. *Tiffany* should not be extended."

The court continued at page 71:

"In reported cases of this nature the courts have been seeking to gather the intention of different testators from the uncertain language of different testamentary provisions. Absolute harmony in the decisions cannot be expected. Upon these questions, however, uniformity of decision can be promoted, with a greater probability of correct conclusion, by the consistent application of those rules of construction in favor of vesting, which have long been employed as guides, although somewhat artificial guides, in determining the intention of a testator, *when the same is obscure.*" (italics supplied)

Referring now to the facts of *Norris,* the testator left the residue of his estate in trust to pay the income to certain designated beneficiaries for life and upon the death of the survivor of them to pay one-half of the then corpus to the children of his daughter Rose. Further provisions were that the other half of the estate should go to the husband and the children of another daughter Alice and, referring to the children of a deceased child of either Rose or Alice, the will provided that "In all of the above cases, the children of a deceased child shall take the share his or her parent would have been entitled to if then living * * * *per stirpes* and not *per capita.*"

The question raised — and it is the same legal question we face here — was whether the gift of one half of the residue vested in Rose's children upon the death of the testator or alternatively remained contingent until the time of distribution.

The court observing that the testator's intention as to the time of vesting was not *without doubt* invoked the aid of the rules of construction and held that absent a contrary manifestation of intention, a class gift vests upon

the testator's death notwithstanding that its enjoyment is postponed until the expiration of intervening estates. It found without significance as evidence of the testator's intention the substitutional gift to children or issue in the event of the failure of a primary taker to survive until the time fixed for distribution. Holding contrary to and criticizing *Luttgen* the court determined that the gift vested upon the effective date of the instrument rather than upon the death of the last surviving life tenant and the will was construed as requiring that an equal share of the trust should be paid to the estate of one of Rose's children who had survived the testator but predeceased the survivor of the life tenants. The rule in *Norris* has since been followed by this court. *Tetlow* v. *Capron,* 49 R. I. 162; *Starrett* v. *Botsford,* 64 R. I. 1; *Rhode Island Hospital Trust Co.* v. *Shaw,* 50 R. I. 78; *Sawyer* v. *Poteat,* 90 R. I. 51; *Stone* v. *Bucklin,* 69 R. I. 274.

We find no language of significance in clause third of the will before us which warrants a departure from the rule laid down in *Norris* and since followed. That the bequest was not of the residue is without significance in the circumstances of this case where the class gift was to relatives. We hold, therefore, that the gift to the cousins vested at the death of the testatrix. A divestiture would, of course, have occurred if a cousin had died prior to the time fixed for distribution leaving no children him surviving.

We inquire next as to whether the lineal descendants of Mrs. Bonce, a cousin who predeceased the execution of the will, are entitled to distributive shares. The problems in respect to these possible takers relate first to the disqualifying effect of the decease of Mrs. Bonce prior to the execution of the will; and second, to whether the alternative or substitutional gift to "children" includes issue more remote than those of the first generation. Although in some circumstances an answer to either problem would be

dispositive, in this cause a discussion of each is appropriate and may, indeed, be demanded.

At common law the death of an intended beneficiary before the testator resulted in the failure of the gift. If the death occurred prior to the execution of the will, it was held that the gift was void; if after the execution but before that of the testator, the rule was that the gift lapsed. *Moore* v. *Dimond*, 5 R. I. 121, 128; 3 Powell, Real Property ¶367, p. 169. The common-law rule was modified in this state late in the eighteenth century when the legislature by the enactment of an anti-lapse statute provided that at least as to a relative-beneficiary predeceasing the testator, the gift did not fail but went instead to his lineal descendants. Digest 1798, p. 282. That statute has several times been amended and in its present form, G. L. 1956, §33-6-19, is classified (see 3 Powell, Real Property ¶367, p. 171, n.89) as broad legislation applicable not only to a relative intended beneficiary but also to *any person* to whom either real or personal property may be devised or bequeathed.

Notwithstanding that neither §33-6-19 nor any of its forerunners contained any specific provision making it applicable to class gifts, this court at an early date recognizing the remedial objective of this type of legislation held that the effect of the statute was to save for the benefit of his lineal descendants a gift to a deceasing possible taker under a class designation but only in instances where death came to the class member subsequent and not prior to the execution of the will. *Winsor* v. *Brown*, 48 R. I. 200 (dictum); *Williams* v. *Knight*, 18 R. I. 333; *Almy* v. *Jones*, 17 R. I. 265.

The problem is different, however, if the testator in addition to making a class gift provides for a substitutional or alternative gift to the issue or children of a possible member of the class predeceasing the time fixed in the will for distribution. There the inquiry relates not to the effect of the anti-lapse statute, but in substance is to whether the

testator intended those in the substitutional group to take in the event that a primary taker predeceased the execution of the will. On this question our own cases are in apparent conflict.

In *Tiffany* v. *Emmet*, 24 R. I. 411, the provision was:

> " '* * * I give and bequeath * * * five thousand dollars to the children of Katharine Temple Emmet * * *. In case of the death before my own decease of any of the legatees herein before named or designated, then everything by this will given to the person so dying shall in every instance go and I give devise and bequeath the same, to the kindred of such person at the date of my death according to the present statutes of Rhode Island prescribing the distribution of estates of persons dying intestate * * *.' "

B, a child of Katharine, predeceased the execution of the will leaving a child C surviving, and before the court for resolution was the question of C's entitlement to the share B would have received had he survived the testator.

In deciding against C's claim the court found it impermissible to presume that the testator intended to include B in the class designation "children of Katharine" because he knew when he executed his will that B was dead. It held that the word "children" as used meant "only children living at the time of the making of the testator's will."

A contrary conclusion was reached, however, in *Gardner* v. *Knowles*, 48 R. I. 231. There the will read:

> " 'I give devise and bequeath all the rest and residue of my estate both real and personal * * * unto my brothers and sisters, in equal shares * * *. In the event of the death of any of them, leaving children then his or her share to be divided equally among his or her children.' "

At the time of the execution of the will a brother had died leaving a child, Mary, surviving.

The court held that she was entitled to a distributive share not by virtue of the anti-lapse statute, but because the language of the will showed an intention to make a direct gift to her. Observing that the testator at the time

he executed his will was aware that his brother had died leaving a child surviving, the court found that the failure specifically to exclude the child of his deceased brother warranted the conclusion that there was an intention to include her. The rationale was that if the testator's intention had been otherwise "he would have used language which clearly expressed that intention."

Although the language construed in *Tiffany* v. *Emmet, supra,* was not identical with that passed upon in *Gardner* v. *Knowles, supra,* neither the language nor the surrounding circumstances were sufficiently dissimilar to justify a diametrically opposite conclusion as to the nature of the manifested dispositive intention. Nonetheless, in the one case the court premising its conclusion upon a failure to include presumed an evinced intention to exclude, while in the other for the reason that the testator did not specifically exclude, it found he must have intended to include. We are persuaded that in neither instance can there be found within the four corners of the will or the circumstances attendant upon the formation of the dispositive plan, any clear evidence of intention as to whether a child of a person otherwise within the class but dead when the will was executed is entitled to take because he is within the substitutional group designated to take the share of a deceased ancestor. In effect, in each of those cases the court adopted a rule of construction. In the one case, it held that absent a contrary intention, it would presume that the testator did not intend to benefit the child of a potential taker who predeceased the execution of the will; in the other, that he did.

Here, as in the cases just discussed, the testatrix' language is ambiguous and susceptible of being read as disclosing contrary intentions. In such circumstances it is appropriate to invoke the aid of a rule of construction. *Industrial National Bank* v. *Clark,* 98 R. I. 434, 204 A.2d

310. The question is which of the apparently conflicting rules we should follow.

In our opinion, the rule of *Gardner* v. *Knowles, supra,* while not that generally prevailing, 3 Powell, Real Property ¶366, p. 168, 3 Restatement, Property §297, p. 1617, is preferable for the reason that no valid reason suggests itself as to why in the absence of some special circumstances the children or issue of a class member dead when the will was executed are any less important to a testator than those of a potential class member dying thereafter and that the date of death is immaterial so long as it occurred prior to the time fixed for distribution. This would more probably have been the intention of one in the testator's circumstances, *Perry* v. *Hunter,* 2 R. I. 80, and according to Professor Casner is preferred as the rule of construction to be followed. 5 American Law of Property §22.53, p. 408.

We hold, therefore, that absent a manifestation of a contrary intention, a substitutional gift of the share of a deceased member of a described group is effective even though that member died prior to the execution of the will.

Was there any such contrary intention here manifested? The substitutional gift was to "the child or children of any of them who may have died before the termination of said trust * * *." The word "children," and necessarily the same applies to the word "child," denotes only descendants of the first generation and excludes more remote issue such as grandchildren or great-grandchildren, unless a contrary meaning is necessary to give effect to the will, or to carry out the testator's intention. This has long been settled. *Industrial Trust Co.* v. *Bennett,* 43 R. I. 355; *Eddy* v. *Mathewson,* 32 R. I. 53; *Re Will of Reynolds,* 20 R. I. 429. Clearly no such contrary meaning can be found or is suggested in the will. We conclude, therefore, that neither the respondents Eleanor Niles and Kenneth Mealy, Jr., great-grandchildren of Mrs. Bonce, nor the heirs or legatees of Raymond E. Wilson, her deceased grandchild, are entitled

to take under the will, not for the reason that their ancestor predeceased the testatrix, but because they were not intended by the testatrix to be included within the designation "child" or "children" in the substitutional gift.

We hold that the principal and any income accruing subsequent to the death of Josephine Corey, the life tenant, should be divided into four equal shares one such share to be distributed to Kate L. McCoy Wilcox and one share each to those entitled to the estate of each cousin who survived the testatrix but predeceased the life tenant.

We are also requested to instruct as to the distribution of unapplied income. That term, as we construe it, connotes undistributed income which was collected or accrued prior to the death of the life tenant. We are unable to comply with this request for the reason that those claiming through Josephine Corey being necessary parties to any such determination, were not before the superior court when the bill was certified to this court.

The parties may present to this court for approval a form of decree, in accordance with this opinion, for entry in the superior court.

*Sheffield & Harvey, Richard B. Sheffield,* for complainant.

*Edwards & Angell, John V. Kean, John Fenn Brill,* for respondent Kate L. McCoy Wilcox.

*Graham, Reid, Ewing & Stapleton, Robert A. Mercer, James A. Jackson,* for respondents Eleanor Niles and Kenneth Mealy, Jr.

*Corcoran, Peckham & Hayes, Edward B. Corcoran,* Guardian ad litem and attorney for persons in the military service.