THOMAS G. HAZARD, TRUSTEE *vs.* HAZARD STEVENS, EX. *et al.*

DECEMBER 5, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Wills.   Gift to Class.   Vesting of Estate.*

Testatrix who owned no real estate, by her will bequeathed the interest and income of all her personal estate, rights and credits of every description

to three single daughters of a deceased brother, and to the survivor or survivors of them while unmarried, providing that whenever any of such nieces should decease or marry, her share of the income should go to the surviving unmarried sisters or sister. The nieces were appointed trustees of the fund, and were directed to keep the principal "whole and entire." In the event that all of such nieces should decease or marry, she bequeathed the whole property to all the married daughters of the brother, and to a daughter of one of such married daughters, and to two nephews who were also children of such brother, to be equally divided between them. The deceased brother had only one child other than those mentioned in the will:—

*Held,* that the general intent of the will was to benefit issue of her deceased brother, and to dispose of all the estate and leave nothing to be distributed as intestate property.

*Held,* further, that it was her intention that when one of the nieces married, she should lose her right to the income, but as one of the married daughters should become entitled to an ultimate share of the corpus of the fund upon the termination of the last life interest.

*Held,* further that the gift to the beneficiaries under the clause to the married daughters, vested in them at the death of testatrix under the general rule that favors vesting at that time unless a contrary intention appears in the will, subject to open and let in one or more of the single nieces in case of marriage.

*Held,* further, that such gift was to a class of beneficiaries rather than individually and distributively, and therefore the death of one of them, without issue prior to decease of testatrix, did not cause a lapse and leave such portion to be distributed as intestate estate, but the beneficiaries took the property as tenants in common, but this occasioned no lapse because of the death of one of them during lifetime of testatrix, since members of the class antecedently dying are not actual objects of gift.

*Held,* further, that as the fund to be distributed was personal estate, it should be divided in equal shares among such members of the class as were living, and the executors or administrators of those deceased.

BILL IN EQUITY for construction of will.

PARKHURST, J. This is a bill in equity for the construction of the will of Mary Hazard, late of Newport, deceased, and for instructions to the complainant trustee of the trust fund of about $6,040.00 existing under it, as to its final distribution.

It is stated that all persons who, under any construction of the will might have any interest in said trust fund have been made parties; and it appears from the papers in the case that all of the defendants answered the bill, admitting its allegations to be true and joining in its prayer, and sub-

mitting themselves and their rights and interests to the judgment of the court. The cause, under the provisions of Chap. 289, Sec. 35, Gen. Laws (1909), is certified to this court by the Superior Court from Washington County, for hearing and determination.

An inspection of the whole will shows it to be a will solely of personal property. No real estate is mentioned or referred to in it, the language used is appropriate to personalty, and counsel informed the court at the hearing that the estate disposed of by the will consisted only of personal property, and that the trust fund now to be distributed consists solely of personal property.

The first seven bequests dispose of numerous specific articles of tangible personalty, and six of those bequests are to nieces of the testatrix, daughters of her deceased brother, Benjamin Hazard, hereafter more specially referred to.

(1) The eighth bequest is as follows: "Item. I give and bequeath to said Emily L. Hazard, Mary W. Hazard, and Nancy Hazard, now single daughters of my brother Benjamin, deceased, and to the survivors or survivor of them while unmarried, the interest and income of all my personal estate, rights and credits of every description, excepting such articles as are hereinbefore disposed of and whenever any of my said single nieces shall decease or marry her share of said income shall go and belong to her surviving unmarried sisters or sister; and to each and every one of said single sisters who shall marry, I give the sum of sixty dollars to be paid by her surviving unmarried sisters or sister."

The next paragraph constitutes these three unmarried nieces, trustees of the fund from which the income is derived, and contains particular directions as to investment and reinvestment, directs them to keep the principal, "whole and entire," etc. The complainant is the present trustee of the fund under this clause.

The next paragraph is as follows: "Item. In case all my aforesaid single nieces, shall have deceased or married, it is my will, and I hereby give and bequeath in that case,

my whole property to all the married daughters of my said brother, Benjamin Hazard, deceased, and to Harriet, the daughter of my niece, Harriet, and to my nephews, Payton and Daniel, to be equally divided between them."

The next clause appoints these same three nieces executrices of the will and the will concludes with the formal clauses of execution and publication.

The portions of the will above quoted in full are those upon which the questions submitted to the court arise. It is admitted by the pleadings that the will was executed January 5, 1846; that the testatrix died in 1852, and the will was duly probated in Newport, R. I., January 31, 1853; that Payton R. Hazard (mentioned in the above quoted clause as my "nephew, Payton") was a son of Benjamin Hazard, deceased, brother of the ladies mentioned in the same clause, and that he died April 9, 1849, in the lifetime of the testatrix, intestate, without issue, and unmarried; and that the other "nephew, Daniel," in said clause mentioned was named Daniel L. Hazard, and was also a son of said Benjamin Hazard, deceased, and that he died May 19, 1911, leaving a will.

It is further admitted that Nancy Hazard, one of the three single nieces mentioned in the clause first above quoted, after the date of the will married John Alfred Hazard, her cousin; that he died May 22, 1880, leaving his widow, Nancy, surviving him; and that Nancy died November 5, 1909, leaving a will; that Emily L. Hazard never married and died April 1, 1909; that Mary W. Hazard never married and died September 22, 1910.

It is further admitted that the married daughters of Benjamin Hazard, referred to in the clause secondly above quoted, were, at the date of the will Margaret L. Stevens and Harriet L. Brooks; that Margaret L. Stevens survived the testatrix, and was living at the time when this bill was filed, and when this cause was argued, but it now appears that she has since died on or about the 4th day of November, 1913; that Harriet L. Brooks died January 26, 1904, leaving

a will; that Harriet L. Stevens is the daughter of Harriet L. Brooks, is the surviving executrix of .her will and is also the same person mentioned in the clause secondly above quoted as "Harriet, the daughter of my niece, Harriet."

The bill also sets forth with much detail  the numerous other collateral heirs of the testatrix; but, in our view of the proper construction of the will, it becomes unnecessary to mention them.

The prior life interests in the income of  the trust fund for the benefit of the single nieces, created under the clause of the will first above quoted, were determined by the death of the last survivor of them, Mary W. Hazard, on September 22, 1910.   The distribution of the trust fund to the ultimate beneficiaries has therefore become due, and the questions raised by the trustee in the bill may be briefly stated as follows:—

1.   Whether the gift to the beneficiaries under the clause of the will secondly above quoted vested at the death of the testatrix, or was such vesting deferred until the determination of the prior life estates?

2.   Whether the gift under said clause was to a class of beneficiaries, or to them individually and distributively?

3.   Whether or not the death of Payton R. Hazard, a beneficiary named in said clause, in the lifetime of the testatrix, caused a lapse of the gift as to him and left it, so far as it was a gift to him, intestate estate to pass to the next of kin of the testatrix?

The intention of the testatrix with regard to the disposition of her estate is easily gathered from the terms of the will itself in the light of the facts above set forth as to the relation between herself and her beneficiaries.   It is evident that her general intent was to benefit issue of her deceased brother, Benjamin Hazard.   The only bequest to any person other than such issue is the first, a comparatively unimportant bequest of a suit of red curtains to Ruth H. Bateman, daughter of a deceased brother, Thomas.   Every other bequest of specific articles is to her nieces, the five

daughters of her deceased brother, Benjamin, of whom three were single and two were married, at the date of the will. The gift of the income of the trust fund created as above set forth was to said three single daughters while unmarried, and to the survivors, etc.; and the gift of "my whole property" in case of the decease or marriage of all the single nieces, was to "all the married daughters of my said brother, Benjamin Hazard, deceased, and to Harriet, the daughter of my niece, Harriet, and to my nephews, Payton and Daniel, to be equally divided between them." As has already appeared, the grandniece, Harriet, was a granddaughter of Benjamin Hazard, and Payton and Daniel were his sons. The above quoted clauses then dispose of *all the residue* of the property of the testatrix (she having only personal estate as above shown) to issue of Benjamin Hazard. The primary intent was to create a trust fund for the benefit of the unmarried nieces, during spinsterhood, by giving them a joint interest in the income, determinable upon marriage or decease, with survivorship; and subject to this provision to dispose of all the corpus of the fund as above set forth. The manifest intent was to dispose of all the estate and leave nothing to be distributed as intestate property.

It is further to be noted that the above quoted language clearly shows that while it was the primary intention of the testatrix to devote all the income of her residuary estate to said single nieces jointly until they either married or died, it was not her intention that the marriage of either of them should deprive the one married of all interest in her estate, but only of the benefit of the income until the last unmarried survivor either married or died. It is obvious that it was her intention that when one of the nieces married, she should drop out of the provision for income, and should become one of the married daughters, and so become entitled to an ultimate share of the corpus of the trust fund, upon the termination of the last life interest. So that when the niece, Nancy, married, as above set forth, after the date of

the will, she ceased to be interested in the income, and became entitled to a proportionate share in the ultimate disposition of the trust fund, being included in the language "In case all my aforesaid single nieces shall have deceased or married, it is my will, and I hereby give and bequeath in that case, my whole property to all the married daughters," etc.

In answer to the questions specifically above set forth, the court is of the opinion:—

1. That the gift to the beneficiaries under the clause of the will secondly above quoted, of "my whole property to all the married daughters," etc., vested in the beneficiaries under that clause at the death of the testatrix, under the general rule which favors vesting at that time unless a contrary intention appears in the will. As was said in *Chafee* v. *Maker*, 17 R. I. 739, 741: "A bequest after the death of a particular person, where an antecedent interest is given in the same will, is generally held not to denote a condition that the legatee shall survive such person, nor to define when the legacy shall vest, but only to mark the time when the gift shall take effect in possession; that possession being deferred merely on account of the life interest limited to the person on whose death the gift is to take effect." And such is the general rule recognized in numerous cases in this State—*Staples* v. *D'Wolf*, 8 R. I. 74, 118, 120; *Rogers* v. *Rogers*, 11 R. I. 38, 71-75; *Pond* v. *Allen*, 15 R. I. 171, 178; *Kenyon, Petr.*, 17 R. I. 149, 159-161; *Ross* v. *Nettleton*, 24 R. I. 124, 127; *Sherman* v. *Baker*, 20 R. I. 446, 451.

"This is the gift of a residue, and the rule is, that such a gift will be construed to be vested; and it is said that, in such case, a very clear intent must be shown to postpone the vesting, because intestacy would often be the consequence of a lapse of such gift, and always may be." *Staples* v. *D'Wolf*, 8 R. I. 74, 120. See, also, *Rogers* v. *Rogers*, 11 R. I. 38, 74.

2. The court is of the opinion that the gift under said clause was to a class of beneficiaries. As we have already

seen, the testatrix herself has in a way classified her benefici-
aries by the provisions for her single nieces, and by her
ultimate disposition of the corpus of the fund, among issue
of her deceased brother, Benjamin Hazard, namely, "all the
married daughters" and two of the sons and a granddaughter
by name. She has also provided for the transfer of one or
more of the "single nieces" to the class of "married
daughters." The reason why she designates the two
nephews, Payton and Daniel, by name, may be explained by
the fact that her deceased brother, Benjamin, had only one
child, other than those mentioned in the will, to wit, a son,
Thomas G. Hazard; and it is evident that for some reason
the testatrix wished her residuary estate to go to her grand-
niece, Harriet, and to all of the children of her brother,
Benjamin Hazard, excepting said Thomas G. Hazard; and
that in order to exclude him she used the names of Payton
and Daniel, rather than other language which would exclude
Thomas G. Hazard, by name. She therefore in effect
bequeaths her entire residuary estate to her grandniece,
Harriet, and to all the married daughters and to the sons
of her deceased brother, Benjamin (excepting Thomas G.
Hazard), in equal shares. There is in all this, no evidence
that it was her intention to bequeath her residuary estate
to such nieces, grandniece and nephews individually and
distributively, so that the death of any one of them without
issue prior to her decease would cause a lapse and leave any
portion of her estate to be distributed as intestate property.
There is no devise over, in such event, and the fact that her
nephew, Payton R. Hazard, died more than three years
before the testatrix, and that she made no change in her
will after his death, indicates that she regarded him as one
member of a class and that it was her intention that the
beneficiaries should take as a class. (See *Jackson* v. *Roberts*,
14 Gray, 546, 552.)

In our opinion these beneficiaries come within the princi-
ples usually recognized by the cases and text-writers on this
subject; thus in Cyc. Vol. 40, pp. 1473, 1475, it is said:

"9. Classes—a. In General. A gift to a class has generally been defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or some other definite proportions, the share of each being dependent for its amount upon the ultimate number. A will may create different classes of persons to share in the property, and where it does so each class should be treated as a unit in distributing the property devised or bequeathed.

"b. WHETHER BENEFICIARIES TAKE INDIVIDUALLY OR AS A CLASS. Whether a devise or bequest is to a class or to the individuals constituting the class distributively depends upon the language of the will. If from such language it appears that the number of persons who are to take and the amounts of their shares are uncertain until the devise or bequest takes effect, the beneficiaries will generally be held to take as a class; but where at the time of making a gift the number of beneficiaries is certain, and the share each is to receive is also certain and in no way dependent for its amount upon the number who shall survive, it is not a gift to a class, but to the individuals distributively, and this is generally held to be the case where the beneficiaries are named and their shares are certain. But even where the beneficiaries or some of them are named, the gift may still be one to a class if it otherwise appears from the will that the testator so intended, and that the enumeration was for the purpose merely of fixing with certainty the class membership."

I Jarman on Wills (6th Ed. Bigelow), p. 262 (*232), defines a gift to a class as follows: "A number of persons are popularly said to form a class when they can be designated by some general name, as 'children,' 'grandchildren,' 'nephews;' but in legal language the question whether a gift is one to a class depends not upon these considerations, but upon the mode of gift itself, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future

time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons."

And I Jarman, p. 263, following the above quotation, gives an illustration of what constitutes a gift to a legal class as distinguished from what is popularly said to form a class, viz.; "A gift to A. B. & C., and the children of D., share and share alike, may, legally speaking, be a gift to a class, but yet these persons would not in the ordinary acceptation of the term form a class." And see *Porter* v. *Fox*, 6 Simons Ch'y, 485, 491; *Knapping* v. *Tomlinson*, 34 L. J. N. S. Ch. 3, 7; *in re Stanhope's Trusts*, 27 Beavan, 201, 203.

In *Towne* v. *Weston*, 132 Mass. 513, the court says (p. 516): "It is no doubt the general rule of construction, that, when a bequest is made to individuals by name, although they in fact constitute a class, the intention to give to them individually is indicated, and thus the share of one dying before the testator will become intestate property. But this rule, founded on the supposed wish of the testator, may be controlled by those portions of a will, if such exist, which indicate an intent that such shall not be the result. If it appears from the whole will that the testator intended his beneficiaries should take as a class, the share of one who dies before the testator will go to the survivors. *Jackson* v. *Roberts*, 14 Gray, 546; *Schaffer* v. *Kettell*, 14 Allen, 528. The fact that the legatees are a class is important, and the circumstance that they are mentioned by name is far from conclusive that they are not to take as such." See, also, *Jackson* v. *Roberts*, 14 Gray, 546; *Schaffer* v. *Kettell*, 14 Allen, 528; *Stedman* v. *Priest*, 103 Mass. 293; *Springer* v. *Congleton*, 30 Ga. 976; *Warner's Appeal*, 39 Conn. 253; *Talcott* v. *Talcott*, 39 Conn. 186. And compare *Church* v. *Church*, 15 R. I. 138, 140, where the principle of the above cases is recognized, but not applied because the intention of the testator ascertained from the whole will did not warrant such application. The words at the end of the gift, "to be equally divided between them," constitute the beneficiaries

tenants in common. 2 Roper on Legacies, \*\*1369–1373; 2 Jarman on Wills, \*\*1121, 1122 (6 Am. Ed. Bigelow). But this occasioned no lapse because of the death of Payton during the lifetime of the testatrix.

In I Jarman on Wills, \*311 (6 Am. Ed. Bigelow), it is said: "Where, however, the devise or bequest embraces a fluctuating class of persons, who, by the rules of construction are to be ascertained at the death of the testator, or at a subsequent period, the decease of. any of such persons during the testator's life will occasion no lapse or hiatus in the disposition, even though the devisees or legatees are made tenants in common, since members of the class antecedently dying are not actual objects of gift." And see *Shuttleworth* v. *Greaves*, 4 Myl. and Cr. 35, 38; *Jackson* v. *Roberts*, 14 Gray, 546; and other cases *supra;* 18 Am. & Eng. Enc. Law, 751 and Note 8, 752.

Although, as we have seen, it was the intention of the testatrix that the ultimate beneficiaries should take as a class all of her residuary estate as tenants in common, subject only to the continuance of the life interests of the unmarried nieces, and the interests of the ultimate beneficiaries became vested in them at the death of the testatrix so far as they were then ascertained, there was still at her death an uncertainty as to the constitution of this class by reason of the provisions already discussed as to the possible transfer of any or all of the "single nieces" by subsequent marriage to the class of the "married daughters." As Nancy married after the date of the will, she was transferred to the class of ultimate beneficiaries; so also might Emily or Mary, or both, have been transferred had they or either of them married. This possibility made the class "fluctuating" under the definitions above, and only to be finally and definitely ascertained, as it was, at the death of the last survivor of the "single nieces." So that while it is held that the fund vested at the death of the testatrix, in those who were then living and within the designated "class," it was subject to open and let in one or more of the single

nieces, in case of marriage. This situation is similar to that which arises upon a bequest to children of a third person after a life estate, where it is held that the bequest creates a vested interest in such children as are living at the death of the testator, which would open to let in children of the same person who were born after the testator's death and before the death of the life tenant. See *Greene* v. *Rathbun*, 32 R. I. 145, 156, and cases cited.

3. In view of the foregoing discussion of principles, we are of opinion that the death of Payton R. Hazard in the lifetime of the testatrix did not cause a lapse of the gift as to him; that he was only designated as a member of a class, and that it was the intention of the testatrix that in case of his death, the whole residuary estate should go to the survivors of the class.

As the entire fund to be distributed is personal estate, it should be divided in equal shares among such members of the class as are living, and the executors or administrators of those deceased. (*Chafee* v. *Maker*, 17 R. I. 739, 741.).

It appears that the following persons are now entitled to the fund:—Harriet L. Stevens (now living), individually, one-fifth part; executor or administrator of Margaret L. Stevens (now deceased), one-fifth part; Harriet L. Stevens, as surviving executrix of Harriet L. Brooks, one-fifth part; Hazard Stevens and Thomas G. Hazard, surviving executors of Nancy Hazard, one-fifth part; Payton R. Hazard and Sabin W. Colton, Jr., executors of Daniel L. Hazard, one-fifth part; and the complainant, trustee, is advised and directed to pay over to the said above enumerated persons said fractional parts of the net proceeds of the trust fund in his hands after the payment of all sums of money properly chargeable to said trust fund as lawfully paid or to be paid by him in and about his administration thereof, including the costs and expenses of this proceeding and reasonable fees as between solicitors and client.

A decree in accordance herewith may be submitted to the court for approval, and the cause will be remanded to the Superior Court for the County of Washington for the entry of such decree when approved.

*Benjamin W. Case,* for complainant.
*Archibald C. Matteson,* for respondents.