This is a bill in equity praying for the construction of certain portions of the will of Alfred Barth, late of Providence, deceased. The bill is brought by the complainant as executor and trustee under said will, and the respondents are all the other parties in interest. The cause, being ready for hearing for final decree in the *Page 86 
superior court, has been certified by that court to us for determination pursuant to the provisions of general laws 1923, chapter 339, sec. 35. No evidence was offered in the superior court by any of the parties, and the matter is now before this court on bill and answers.
The complainant first seeks to be informed as to its duty under the provisions of the second clause of the will in question, viz: "second I order my above named executor to pay to the Swan Point Cemetery corporation the sum of One Thousand Dollars, the interest therefrom to be used for flowers on decoration day, and keeping my monument in condition, having the date of mine and my wife's death cut on said monument." The proprietors of Swan Point Cemetery, a corporation, contends that the bequest to it is valid and that the complainant should pay over to it forthwith the sum named in said clause. The respondents Charles A. Barth and Alice M. McKenzie, each having a life interest in a fractional part of the income derived from a trust established by the testator's will in his residuary estate, maintain that the bequest set out in said second clause is invalid and unenforcible, and that the sum mentioned therein falls into the trust above referred to. The respondent Philadelphia College of Pharmacy and Science, as the ultimate beneficiary under the trust, has not briefed or argued any point in connection with the above clause.
It is well settled in this state that, unless given legislative sanction, a trust for the general purposes enumerated in the above-mentioned clause is invalid and unenforcible, being in perpetuity and constituting a private and not a charitable use. Kelly v. Nichols, 17 R.I. 306; Sherman v. Baker,20 R.I. 446; Shippee v. Industrial Trust Co., 43 R.I. 115;Todd v. St. Mary's Church, 45 R.I. 282; Meehan v. Hurley,51 R.I. 51.
The legislature, however, has authorized the establishing of trusts in perpetuity, generally speaking, for the *Page 87 
care and preservation of cemeteries, burial lots, monuments and other such structures. Town councils may receive and hold funds for such general purposes, G.L. 1923, chap. 51, sec. 40, as may trust companies under certain specified conditions. G.L. 1923, chap. 271, sec. 4 (i). Further, certain cemetery corporations in this state have likewise been specially permitted by their charters to take and hold funds in perpetuity for certain above-mentioned purposes. Probate courts are also given certain jurisdiction in regard to authorizing expenditures from estates for such matters. G.L. 1923, chap. 369, sec. 4.
In the instant case the cemetery corporation contends that it is entitled to receive and hold the fund mentioned in the second clause of the testator's will be reason of a provision in its charter as follows:
 "Sec. 6. Any lot owner in said cemetery may at any time by deed or will convey or devise any lot or parcel of land therein then owned by him in his own right in fee simple to this corporation, to hold the same in perpetual trust for such uses and purposes consistent with the objects of the corporation as may be in such trust deed or devise declared, and any person may convey, devise, or bequeath any estate, real or personal, to this corporation in perpetual trust, to apply the same or the proceeds or income thereof to the care, support, or improvements of said cemetery, or any part thereof, or any lot or monument or structure therein, provided that no such trust shall be binding or obligatory upon the corporation until the same has been accepted by vote of the Directors for the time being duly recorded."
The parties hereto do not question that under the above provision the cemetery corporation would be entitled to hold funds, income from which was to be used to cut dates on a monument in said cemetery and keep such monument in condition. A question is raised, however, by certain respondents regarding the validity of the use of income for the other purpose set out in the above-mentioned second clause, viz.: "for flowers on decoration day." *Page 88 
A somewhat similar question was considered by the court inMeehan v. Hurley, supra, where a testator bequeathed $500 to an individual trustee "said money to be used until the fund is exhausted in the purchasing of flowers which I hereby direct my executor shall place every year at Easter, Decoration Day and Christmas upon my grave." The court there held that the above provision created a private and not a charitable trust, and said at page 52: "If a testator is not permitted to create a private trust for the perpetual care of his burial lot, with greater reason should he be prevented from creating a private trust for placing flowers upon his grave for an indefinite length of time."
The Meehan case, however, differs from the case at bar in that in the former the named trustee was an individual, whereas in the instant case the trustee is a cemetery corporation authorized by its charter to hold funds in trust in perpetuity for certain named purposes. Moreover, in that case the court did not specifically discuss or decide whether or not another trustee could properly be named to execute the trust then before the court, but it merely held that such trust could not be carried into effect. That case is, therefore, not wholly determinative of the issue herein, since it is not entirely clear whether the decision rests upon the ground that the trustee named was an individual unauthorized by legislative sanction to hold funds for the designated purpose, or upon the ground that the object sought to be attained by the testator could not be carried out in any event, because it constituted a private use in perpetuity not recognized or permitted by any specific legislative authority.
In the present case it is clear that the named trustee, a cemetery corporation, is qualified to hold in trust the fund involved herein, provided the purpose relating to the use of flowers on Decoration Day is included in the authority conferred upon said cemetery corporation by the *Page 89 
terms of its charter. The material provision of the charter is as follows: "to apply the same (estate) or the proceeds or income thereof to the care, support, or improvements of said cemetery, or any part thereof, or any lot or monument or structure therein, . . .". The question is presented therefore as to whether or not the above language can and should be construed so as to authorize the cemetery corporation to employ income of the trust fund for flowers for the testator's lot on Decoration Day, in accordance with his expressed intent.
In considering this question it has come to our attention that frequently cemetery corporations or other bodies are given by statute or charter the specific right to hold and employ funds or the income thereof for the purpose of planting flowers, trees and shrubs in cemeteries and in the lots thereof. Likewise in similar statutes and charters the words "embellishment", "beautifying" or "ornamenting" often appear in connection with the authority to hold and expend money for the care and maintenance of said cemeteries and the lots, graves and monuments therein. However, no specific words of like import appear in the charter now before us. It may here be noted that in G.L. 1923, chap. 51, sec. 40, dealing with the power of town councils to hold funds for the above purposes the word "ornamenting" appears.
We feel that undoubtedly the legislature intended to grant to the proprietors of Swan Point Cemetery under the terms of its charter reasonably wide authority in the handling of the funds entrusted to its care, and it is our opinion that such terms should be liberally and broadly construed so as not to limit unduly the cemetery corporation, but to permit it, when fairly possible, to carry out the intents and desires of testators in connection with the care, support and improvement of their lots and structures in said cemetery. However, the authority of the cemetery corporation clearly is not unlimited in this *Page 90 
regard, but must be confined within the reasonable meaning of the language used in the charter. The nature of a private use or purpose for which funds may be held in perpetuity under legislative authority is a question of public policy for the legislature to pass upon, and any sanction should appear clearly in the legislative grant in order for the court to give it effect.
We have given the question now before us careful consideration and have come to the conclusion that, even construing the above-quoted language in the charter in question liberally and broadly, it does not empower the cemetery corporation to use income from the fund provided for by the second clause of the testator's will "for flowers on decoration day". We construe the words used in the charter to import the use of funds for a more or less regular and continuous care, support or improvement from time to time in relation to the cemetery lot itself and the monuments and structures therein, the primary legislative purpose being that the place of burial be respected and be kept in a condition of decency and good order. However, the provision in the clause in question that flowers be used on Decoration Day, in our judgment, contemplates an act which is brought about by a purpose and intent essentially different in character from those above referred to. The placing of flowers in a burial lot on a particular day of the year connotes the idea of a personal memorial or remembrance, and ordinarily bears little or no relation to the idea of care, support or improvement of the lot itself or the structures therein.
We have, also, examined the language in G.L. 1923, chap. 271, sec. 4 (i) giving to trust companies in this state power to accept and hold property "in trust for the care and preservation of burial grounds . . . and of the stones, monuments, fences and other structures thereon. . . ." For the reasons above indicated, we do not find anything in section 4 (i) supra which constitutes legislative authority *Page 91 
supporting the validity of the trust in the second clause of the will in so far as it relates to the use of flowers on Decoration Day, even giving the broadest construction to the last sentence of the section, viz:, "Trusts for any of the purposes aforesaid are hereby declared to be charitable trusts." In our opinion, the placing of flowers on Decoration Day on a burial lot is not properly included within any of the "purposes aforesaid" mentioned in said section. We find, therefore, that the trust set out in the said second clause in relation to the use of flowers is for a private and noncharitable use in perpetuity, is not authorized by the act of the legislature or by the provisions of the charter of the cemetery corporation and, hence, is invalid.
The question is next raised as to whether or not the entire trust provided for in said second clause is void or merely the portion relating to the use of income for flowers. Following the general trend of authority this court has held that: "If an unascertainable portion (of a fund) be given upon a void trust and the residue upon a valid trust the whole fails." Kelly v.Nichols, supra, at page 322. See also Pell v. Mercer,14 R.I. 412, at 442. Mason v. Perry, 22 R.I. 475; Clattery v.Ward, 45 R.I. 54. 11 C.J. 330. In the case of Todd v. St.Mary's Church, supra, which has been called to our attention in this connection, it appeared by agreement that a certain definite part of the total fund left in trust applied to the portion of the trust which was held void, and the court then held the remainder of the trust valid. However, in the instant case it does not in any way appear how much of the income of the $1000 is to be applied to flowers, or that any definite part of the principal sum of $1000 could properly be set apart for that purpose.
Certain authorities do hold that, if a general overriding trust for charitable purposes can be found from the language used, or if such purpose runs through, permeates and *Page 92 
modifies the whole trust in such a manner that its purposes are thus connected, then the entire trust will not be declared void but the portion relating to the charitable use will be given effect. 10 Am. Jur., p. 655, § 100; 11 C.J. 330; 14 L.R.A. (N.S.) 87, note; 37 L.R.A. (N.S.) 1002, note; 2 Bogert Trust Trustees, § 372.
Upon examination of the language used in the second clause in creating the trust now before us, we do not find, running through the entire trust, any overriding purpose made valid by legislative act. Apparently, the trust is divided into two principal parts. After the dates are cut into the monument the income is to be used for flowers on Decoration Day and for keeping the monument in condition. It is difficult to ascertain which purpose, if either, was uppermost in the testator's mind. As a matter of fact, the first reference is to the use of flowers. We find, therefore, that the trust in question is not divisible and that the entire trust attempted to be set up in said second clause is invalid and unenforcible. Hence, the sum mentioned in said clause falls into the trust created by the fourth paragraph of the will.
However, it is possible that the executor herein could properly obtain authority to have the dates in question cut in the monument and to provide for its care, both of which matters were included in the trust attempted to be set up in the second clause of the will. See G.L. 1923, chap. 369, sec. 4. A similar suggestion was made by the court in Todd v. St. Mary's Church,supra, and in Meehan v. Hurley, supra.
A question is also raised by the complainant as to the construction to be placed upon the fourth clause of the will. This clause is as follows: "Fourth — after my wife's death the Rhode Island Hospital Trust will continue to be my executors until the death of the last beneficiary, in this my last will and testament, the net income of my estate is to be divided in four equal parts to be paid as the *Page 93 
Trust Company choses, at least once in six months or oftener if the beneficiary should be in need of same.
First — my nephew Charles A. Barth, son of my brother William J.A. Barth,
Second — to Fred J. Lang #1052 Park Ave, in the city of Cranston, R.I.
Third — to Alice M. McKenzie, a dear friend of my wife and myself,
Fourth — to Frank C. Meegan Jr. at present emplyed as mechanic at Roger Williams Park in this city, providing however should he be living with his former or perhaps his present wife Evelyn Bradley, who divorced him 1927, or 1928 his part will be reversed back to the estate, so with the death of each of the other beneficiaries, at the death of the last of the full amount is to be given to the Philadelphia College of Pharmacy and Science, located at 43td st. Philadelphia, to be known as the Alfred Barth research fund in memory of my dear friend John M. Maish."
It appears that the testator's wife is dead. All the above-mentioned beneficiaries of income survived both the testator and his wife, who died January 14, 1937. However, on March 8, 1937 Fred J. Lang died. A doubt has now arisen as to the proper disposition to be made by the trustee of the one-fourth part of the income accruing since his death, and which would be payable to him under the provisions of the will were he now living. The respondents Charles A. Barth and Alice M. McKenzie maintain that the one-fourth part of the income to which Fred J. Lang was entitled during his life should be divided equally between them and Frank C. Meegan Jr., as the three surviving specifically named beneficiaries of the income from the trust estate. The respondent Frank C. Meegan Jr. by his answer alleges that, "as each of said four beneficiaries die, the one one fourth or one fourths of said net income which would have been payable to the deceased beneficiary or beneficiaries had he, she or they lived . . . should be *Page 94 
accumulated and added to principal pending the death of the last survivor of the above named Charles A. Barth, Alice M. McKenzie and Frank C. Meegan, Jr." The ultimate beneficiary, Philadelphia College of Pharmacy and Science, takes the same position in argument as does the respondent Frank C. Meegan Jr., with the added contention that, if such disposition of the one-fourth part of the income in question is not correct, such ultimate beneficiary is entitled to be paid such part as it accrues.
As the basis for their claim, the respondents Charles A. Barth and Alice M. McKenzie urge that a right of survivorship exists among the beneficiaries who were named by the testator to each enjoy a one-fourth part of the income of the estate after the death of his wife, because of the fact that such beneficiaries constituted a class and, also, were joint tenants of such income and not tenants in common. We are unable to agree with these contentions.
It is our duty in construing the clause now under consideration to ascertain, as best we may, the intent of the testator, and then to give effect to that intent. Bliven v.Borden, 56 R.I. 283. This court has had occasion many times to pass upon the question of whether or not a particular bequest was to a class. In each case the court has attempted to ascertain the testator's intent in order to determine the question. SeeTillinghast v. Andrews, 11 R.I. 84; Church v. Church,15 R.I. 138; Chase v. Peckham, 17 R.I. 385; Mowry v. Taft,36 R.I. 427; Darling v. Witherbee, 36 R.I. 459; IndustrialTrust Co. v. Keyes, 45 R.I. 496; Winsor v. Brown,48 R.I. 200.
Apparently courts have had difficulty in defining concisely and accurately the word "class", as employed in the above connection. The following definition, which resembles in many respects that appearing in 1 Jarman on Wills (6th ed.) 262, was approved in Hazard v. Stevens, 36 R.I. 90, at page 98, viz: "A gift to a class has generally been defined as a gift of an aggregate sum to a body of persons *Page 95 
uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal, or some other definite proportion, the share of each being dependent for its amount upon the ultimate number. A will may create different classes of persons to share in the property, and where it does so each class should be treated as a unit in distributing the property devised or bequeathed."
Further, the cases above cited show that, if there is no uncertainty at the time of the execution of the will in the number of persons who are to take under the bequest, or as to the size of their respective shares, the gifts are ordinarily held to be to them individually and not to them as a class, even though in some instances the beneficiaries are referred to as a class as well as by name. On the other hand, the fact that legatees are mentioned by name is not necessarily conclusive that the gift is to them individually. In Church v. Church, supra, the court held at page 140: "In these cases, however, the general rule, that a gift to persons named is a gift to them individually, is recognized, and reasons are found in the language or structure of the will, or in the circumstances, for deciding that the intent of the testator, which is, of course, paramount to the rule, would be best subserved by disregarding it." And in Hazard v.Stevens, supra, the court at page 98 approved the following language from 40 Cyc. 1475: "But even where the beneficiaries or some of them are named, the gift may still be one to a class if it otherwise appears from the will that the testator so intended, and that the enumeration was for the purpose merely of fixing with certainty the class membership."
In view of these holdings, we have examined the fourth clause carefully in order to discover the testator's intent. As a result, we find that he intended the bequests of income mentioned therein to be to the persons named individually, and not to them as a class. We are aided to this conclusion by several circumstances. In addition to the fact that the *Page 96 
beneficiaries are specifically named, their number fixed and their respective shares of income definitely pointed out, such beneficiaries are not described by any class or group designation. It is clear that these beneficiaries have no particular attributes in common and apparently are not united or connected by any common tie. One beneficiary is described in the will as the testator's nephew; another as a friend of the testator and his wife; and the other two, whose connection with the testator is not explained, do not appear to be related to him. The naming of the particular beneficiaries, in our judgment, was intended to be more than the mere identification of members of a class. The testator had in mind the named individuals themselves, rather than any group or body made up of those individuals.
The clause under consideration also provided that "the net income of my estate is to be divided in four equal parts", each one of which was to be paid to one of the four named beneficiaries for life. The clause then provided that on the happening of a certain contingency the share of Frank C. Meegan Jr. "will be reversed back to the estate, so with the death of each of the other beneficiaries, at the death of the last the full amount is to be given. . . ." The share thus referred to is clearly the one-fourth share of income to which the beneficiary is entitled for his life, and there is no immediate gift over, express or implied, of any such share of income after it has come back into the estate. It is our opinion, therefore, that the three surviving beneficiaries of income are not entitled by reason of a gift to a class, of which they are members, to receive in equal shares by way of survivorship the one-fourth part of the income to which Fred J. Lang was entitled.
In regard to the claim that the life beneficiaries of the shares of income are joint tenants and not tenants in common, it is necessary first to note the provisions of the statute declaring the law in this connection. G.L. 1923, *Page 97 
chap. 296, section 1 is as follows: "All gifts, feoffments, grants, conveyances, devises, or legacies, of real or personal estate, which shall be made to two or more persons, whether they be husband and wife or otherwise, shall be deemed to create a tenancy in common and not a joint tenancy, unless it be declared that the tenancy is to be joint, or that the same is to such persons and the survivors or survivor of them, or to them as trustees or executors, or unless the intention manifestly appears that such persons shall take as joint tenants and not as tenants in common."
In the clause of the will now before us there is no specific declaration that the tenancy of the beneficiaries of the shares of income is to be joint, nor that the survivor or survivors of such beneficiaries shall take such income. The respondents Charles A. Barth and Alice M. McKenzie strongly urge, however, that it manifestly appears from the will that it was the intent of the testator that the beneficiaries in question should take as joint tenants and not as tenants in common. They rely largely on the holding of the court in Monroe for an Opinion, 42 R.I. 412.
In that case the language of the will was: "I give to Amy A. Whipple and Winnie Lewis Monroe of Central Falls, R.I. the income from the residue of my estate both personal and real, share and share alike, during their lifetime, and at their deaths, I give and bequeath all the residue of my estate both personal and real to the Central Falls Public Library, as a memorial to the late Lisander Flagg and his family." The court, at page 414, held that there was a "clear and evident intention of the testatrix as manifested by the provisions of the will to create a joint tenancy and not a tenancy in common." This finding was based in part on the fact that the two life beneficiaries were given the whole and undivided income, share and share alike, during their lifetime.
It is apparent, however, upon examination that the provisions of the will in the Monroe case and those of the *Page 98 
will now before us differ greatly, and that such case and the instant case are distinguishable. The will in the present case provided specifically that after the death of the testator's wife "the net income of my estate is to be divided into four equal parts", each part is to be paid to a named beneficiary for life, and each part "will be reversed back to the estate" upon the death of the beneficiary receiving such part. No gift over is provided for until all the life beneficiaries have died. No language is used by the testator to indicate that the part of the income which has "reversed back to the estate" is to be at once paid out again. Rather such quoted words indicate the idea of retention.
Further, it is clear that the testator, in directing, without additional words of explanation, that the net income of his estate, after his wife's death, be divided into four equal parts, intended that each of the life beneficiaries was to be paid one quarter of the income only, and that such division was to continue until the death of all such beneficiaries, regardless of how many might be living at any one time. No such provisions as we have indicated above are contained in the will involved in theMonroe case. We are, therefore, of the opinion that in the will now under consideration no manifest intention appears that the beneficiaries of the shares of income were to take as joint tenants and not as tenants in common, if indeed as tenants at all. It is plain from the language used that the intention of the testator is otherwise. This being the case, it follows that, even if the statute applies, such beneficiaries take without any right of survivorship. See Church v. Church, supra; Industrial TrustCo. v. Keyes, supra; Hoxie v. Page, 23 F. Supp. 905.
Finally, we discover nothing in the present will which indicates that it should be construed in such a manner that the bequest of one fourth of the net income for life to each of the four beneficiaries created a gift by *Page 99 
implication to the survivors of said beneficiaries of the one quarter of the net income to which the deceased life tenant was entitled. InThomas v. Rhode Island Hospital Trust Co., 50 R.I. 369, the law was stated to be as follows, at page 374: "The authorities are almost unanimous to the effect that an estate by implication is never permitted, except from necessity, which must be apparent on the face of the will, and for the purpose of effectuating the manifest intention of the testator." In the instant case we perceive no necessity appearing on the face of the will which makes it necessary to imply such a gift, as is above referred to, in order to carry out the manifest intent of the testator. For the reasons we have pointed out, therefore, we find that no proper construction of the clause of the will under consideration will permit the three surviving life beneficiaries of shares of net income to divide equally between them the share of income which was payable to the life tenant, Fred J. Lang, now deceased.
In view of this holding, it now becomes necessary to determine the proper disposition to be made of the one-fourth share of income last mentioned. We are aware that ordinarily a construction which requires income to be accumulated and added to principal or held will not be given to a will, and that in the absence of language indicating such an intent on the part of a testator none usually will be inferred. Further, it is generally held that income arising from a vested interest, even though the full enjoyment of such interest may be postponed to await the happening of some contingency, is payable to the vested remaindermen as such income accrues. Butler v. Butler,40 R.I. 425; Aldrich v. Aldrich, 43 R.I. 179; New England Trust Co. ofBoston v. Brown, 44 R.I. 87.
In the present case, although the ultimate beneficiary has a vested interest in remainder, we are of the opinion that, in view of the language used in the fourth clause of the will in question, such ultimate beneficiary is not entitled *Page 100 
to have the one-fourth part of the net income which was payable to the life tenant, Fred J. Lang, prior to his decease, now paid to it, as said part of the net income accrues.
Said clause has been set out and extensively referred to hereinbefore. No words of inheritance are attached to the gifts to the life tenants of specific parts of the net income. The language relating to the division of the net income into four equal parts, following the death of the testator's wife, is clear and positive, and the inference that no such life tenant shall ever receive more than a one-fourth part of such net income is unmistakable. The provision that as each life beneficiary of a share of net income dies, "his share will be reversed back to the estate", is not followed, as we have already pointed out, by any direction that the share of income, so coming into the estate, be then and there paid out by way of gift over to any other person. And finally, the clause contains the provision that "at the death of the last the full amount is to be given to the Philadelphia College of Pharmacy and Science . . . ," as a fund in memory of a friend. (italics ours)
From these provisions of the fourth clause, in our judgment, a manifest intent on the part of the testator expressly appears that, on the death of each life beneficiary of a one-quarter part of the net income, such part shall be accumulated and added, as it accrues, to the principal of the trust estate, until the time for payment to the ultimate beneficiary has arrived upon termination of the trust. Thus, the "full amount" to be paid over to the ultimate beneficiary will be comprised of the originalcorpus of the trust estate and accumulated and added income. Such a construction of the fourth clause, in our opinion, is reasonable and necessary if we are to make the clause effective as a whole, and are to give to the language employed its ordinary and natural meaning, even though it may result *Page 101 
in increasing the size of each one-quarter part of the net income. We hold, therefore, that the one-quarter part of the net income to which Fred J. Lang was entitled during his life should, after his death and up to the time the trust is terminated, be accumulated and added as it accrues to the principal of the trust estate.
On December 30, 1938, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.